# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2023

Lyle W. Cayce
Clerk

No. 21-20625

Bronson McClelland,

*Plaintiff–Appellant,*

*versus*

Katy Independent School District; Kenneth Gregorski; Justin Graham; Henry Gaw; Robert Keith Meier; Ken Tabor; Stephanie Fulgencio; Katy Independent School District Police Department; KISD Board of Trustees; Gary Joseph; Joan McPherson; Courtney Doyle; Ashley Vann; Ashly Darnell; Leslie Haack; Rick Hull,

*Defendants–Appellees.*

---

Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 4:21-cv-00520

---

Before Wiener, Higginson, and Wilson, *Circuit Judges.*
Jacques L. Wiener, Jr., *Circuit Judge*:

Plaintiff-Appellant Bronson McClelland appeals the district court's dismissal of his (1) 42 U.S.C. § 1983 claims against Defendants-Appellees on the basis of qualified and sovereign immunity; (2) overbreadth and void-for-vagueness claims; and (3) substantive and procedural due process claims. We AFFIRM.

# I. BACKGROUND

A. *The Snapchat Video Incident*

On October 3, 2019, following a particularly heated football game between Katy High School ("KHS") and Tompkins High School, Plaintiff-Appellant Bronson McClelland sent a video to Jose Hernandez. At the time, McClelland was a student at KHS and the starting quarterback of its football team. Hernandez was a student at Tompkins High School but not on its football team. After that game, McClelland, Hernandez, and other students gathered at an off-campus Whataburger restaurant and taunted each other in person and digitally via the Snapchat social media platform.[1] While outside of the restaurant, McClelland recorded and sent a three-second video to Hernandez via Snapchat wherein McClelland stated, "[We'll] put your mother[ ]cking ass in the hospital, n[ ]gga'. What the f[ ]ck." Hernandez recorded that video using his phone, then sent it to several friends. Tunmise Adeleye, a Black student and football player at Tompkins High School, received the video and posted it to his personal Twitter page, so that it allegedly appeared that he received it directly from McClelland. The video quickly circulated and began attracting media attention.

The next day, McClelland and his parents met with Defendants-Appellees Rick Hull, KHS's Principal, and Gary Joseph, the KHS football coach. Hull and Joseph determined that McClelland would be suspended for two games and would immediately cease to be team captain. After that meeting, McClelland posted an apology on his personal Twitter account, explaining that he had been stripped of his captain position and suspended for two games. Within hours of this post, Hull and Joseph allegedly contacted McClelland's father and demanded that McClelland remove the apology or

---

[1] Snapchat allows users to share images and videos with their other "friends" on the Snapchat platform. The photos and videos typically disappear after recipients have viewed them.

revise it to state that McClelland had been "suspended indefinitely." McClelland alleges that Hull demanded the retraction because he did not want it to appear as though KISD had "rushed the investigation." Defendant-appellee Katy Independent School District ("KISD") then released its own statement about the incident, explaining that "a KHS student-athlete posted a video of himself on social media in which he used racially charged language to taunt a student-athlete on the opposing team." KISD's statement also said that "[t]he student responsible will face disciplinary consequences in accordance with the Katy ISD Discipline Management Student Code of Conduct and Athletic Code of Conduct."

McClelland alleges that KISD "promoted the false-narrative that Plaintiff was a racist" because KISD had full knowledge that McClelland did not send the video directly to a Black student or to a student on the opposing football team. McClelland also alleges that several days after the incident, in early October 2019, Joseph held a team meeting during which he admitted that he had previously tolerated the use of the N-word, but then announced a new rule prohibiting the use of that word. McClelland and his parents requested that KISD rescind or correct its public statement, but it refused to do so. McClelland claims that, as a result of this refusal, the NCAA recruitment efforts were suspended. In the months following the incident, McClelland and KISD corresponded back and forth in efforts to resolve the fallout from the alleged false statement. McClelland informed KISD that he would pursue legal remedies if the matter remained unresolved after September 18, 2020.

B. *The Vehicle Search*

On September 17, 2020, a canine unit with the KISD Police Department identified McClelland's car in an allegedly random search of KHS's parking lot. Defendant-appellee Officer Stephanie Fulgencio commenced a search and located .04 grams of a "green leafy substance" on the rear floor mat of the vehicle. Fulgencio summoned McClelland to the

vehicle, where McClelland explained that he and his brother shared the vehicle. McClelland also denied ownership, knowledge, or possession of the presence and the nature of the green leafy substance. Before any testing was done to confirm the nature and quantity of the substance, defendant-appellee Assistant Principal Ashly Darnell, acting on behalf of KHS and KISD, charged McClelland with possession of marijuana under the Texas Health & Safety Code.

On September 18, 2020, Hull held a disciplinary hearing during which Fulgencio stated that an "unusable amount" of the green leafy substance was found and would need to be tested for its tetrahydrocannabinol concentration. Three days later, Fulgencio confirmed that the substance was marijuana, and she and the KISD Police Department Assistant Chief Kevin Tabor (also a defendant-appellee) issued a supplemental police report reflecting this. McClelland was suspended for three days and placed in the Disciplinary Alternative Education Program ("DAEP") for forty-five days. McClelland alleges that Fulgencio and Tabor falsified their supplemental report because the substance had only been tested for the existence of marijuana but not for its potency, which is required to establish that it exceeded the legal threshold for marijuana.

Soon afterwards, McClelland sought to transfer out of the school district. He also challenged his DAEP placement through an appeal to KISD. McClelland and KISD eventually agreed to resolve the dispute and entered into a settlement agreement (the "Settlement") on September 29, 2020. The Settlement contained a "complete and general release of claims by [McClelland's] family" and a covenant not to sue, which would not be binding on McClelland if he were (1) denied admission to a transfer school or (2) not cleared by California regulations to participate in varsity sports because of the events at issue. The Settlement further provided that if McClelland were to enroll in KISD in the future, the disciplinary abatement would be null and void, and he would still be required to complete his time in

the DAEP. The Settlement also required KISD to prepare forms stating that McClelland was not subject to discipline for the marijuana-related incident. KISD Superintendent (and a defendant-appellee) Dr. Ken Gregorski issued an official letter which stated that (1) McClelland did not intend to possess the substance on campus and (2) McClelland's brother had come forward and admitted to possessing the substance found in their shared vehicle.

After the Settlement was executed, McClelland attempted to transfer to a high school in California and then to Manor Senior High School in Texas. McClelland alleges that KISD provided erroneous transcripts to the California school which prevented him from transferring there. McClelland then enrolled at Manor High School but could not get his varsity sports eligibility reinstated because of various residency requirements. McClelland reenrolled at KHS on October 29, 2020. On McClelland's return, Gregorski, Hull, and Justin Graham initiated an additional appeal concerning the marijuana offense. The three-member appeals panel determined that McClelland had violated the Texas Health & Safety Code for possession of marijuana. As a result, McClelland was placed back into the DAEP, preventing him from returning to KHS or its football team.

## II. PROCEDURAL HISTORY

In January 2021, McClelland sued Forensic Laboratory, Inc., KHS, the KISD Police Department, the KISD Board of Trustees ("KISD Board"), and a number of KHS, KISD, and KISD Police Department employees in their individual and official capacities. That suit was filed in the state district court in Fort Bend County, Texas. McClelland alleged (1) violations of 42 U.S.C. § 1983; (2) violations of his procedural and substantive due process rights; and (3) various state law claims, including defamation, spoliation, and civil conspiracy. The case was removed to the Southern District of Texas on

February 17, 2021. After limited motions practice, Defendants-Appellees[2] filed a motion to dismiss all claims under Rule 12(b)(6) and to dismiss some claims under Rule 12(b)(1).

In a twenty-seven-page Memorandum and Order issued on November 1, 2021, the district court granted Defendants-Appellees' motion to dismiss and denied several other pending motions.[3] Without fully reaching the merits of McClelland's First Amendment claims, the district court held that each defendant-appellee was entitled to either qualified or sovereign immunity. The court explained that McClelland's First Amendment rights were not clearly established at the time of the Snapchat incident because "there was no general rule that could have placed Defendants on notice that it would be unconstitutional to discipline Mr. McClelland for his off-campus speech." The court further held that McClelland failed to state a claim for municipal liability because he did not "sufficiently connect the policymaker—here, the KISD Board—to the allegedly unconstitutional policy."

The district court also ruled that McClelland failed to state a void-for-vagueness claim because he did not show that he was deprived of a protected property right or liberty interest. The court further held that McClelland failed to show that his procedural and substantive due process rights were violated in connection with the discipline he received for possessing marijuana and to state an overbreadth claim because he could not point to other examples of conduct that would be unconstitutional under the Athletic

---

[2] The moving parties comprised a smaller group than was originally sued. The movants (now Defendants-Appellees) included: KISD, KHS, Gregorski, Graham, Gaw, Meier, Tabor, Fulgencio, KISD Police Department, KISD Board, Joseph, McPherson, Doyle, Vann, Darnell, Haack, and Hull. Their motion to dismiss was supplemented shortly after filing to add KHS, which had been omitted inadvertently.

[3] The other pending motions were (1) Defendants-Appellees' motion to quash deposition notices; (2) McClelland's motion to unseal the motions to quash deposition notices; and (3) McClelland's motion to strike Defendants-Appellees' affirmative defense. Only Defendants-Appellees' motion to dismiss is at issue in this appeal.

Code of Conduct. Finally, the district court declined to exercise supplemental jurisdiction over McClelland's state law claims and dismissed them without prejudice. McClelland timely appealed.

## III. STANDARD OF REVIEW

We review a motion to dismiss *de novo*, accepting all well-pleaded facts as true and drawing all inferences in favor of the plaintiff.[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] The district court is limited to the contents of the pleadings, including any attachments.[6] Conclusional allegations, naked assertions, and "a formulaic recitation of a cause of action's elements will not do."[7] When the defense of qualified immunity is raised in a motion to dismiss, "the [trial] court has an 'obligation . . . to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery.'"[8]

## IV. ANALYSIS

McClelland contends that the district court erred by dismissing his free-speech related § 1983 claims on the basis of qualified immunity because (1) Hull's regulation of McClelland's off-campus speech was unconstitutional; (2) McClelland's free speech rights were clearly established at all relevant times; and (3) McClelland sufficiently pleaded *Monell* liability. McClelland also asserts that the district court erroneously dismissed his claims for vagueness and due process violations because he

---

[4] *Marks v. Hudson*, 933 F.3d 481, 485 (5th Cir. 2019).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[6] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[7] *Bell*, 550 U.S. at 555.

[8] *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)).

pleaded facts demonstrating that he was deprived of specific property and liberty interests as a result of Defendants-Appellees' conduct. Finally, McClelland alleges that the district court erred in ruling that he had not stated a remediable overbreadth claim since he pleaded facts showing that "third parties would be damaged by [KISD's] broad-sweeping regulations."

### A. McClelland's First Amendment claims arising under 42 U.S.C. § 1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."[9] However, "[t]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."[10] Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating that "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time."[11] Courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[12] Once a court determines that the right asserted was not clearly established, it need not reach the more difficult constitutional question.[13]

---

[9] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005), *abrogated on other grounds*, *Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2018) (citations omitted).

[10] *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

[11] *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (quoting *Morgan*, 659 F.3d at 371)).

[12] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[13] *Id.* at 242; *see also Camreta v. Greene*, 563 U.S. 692, 707 (2011) (recognizing that "courts should think hard, and then think hard again, before turning small cases into large ones"); *Morgan*, 659 F.3d at 384 ("Because we have granted immunity to the [defendants] at step two of the qualified-immunity analysis, it is within our discretion to decline entirely to address the constitutionality of the defendants' conduct.").

### i.    *Overview of First Amendment free speech jurisprudence*

In 1969, the Supreme Court solidified public students' free speech rights in *Tinker v. Des Moines Independent Commission School District*.[14] The Court protected such students' right to engage in passive protests of the Vietnam War with black armbands, declaring that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."[15] The Court cautioned that public students' free speech is not without limits, however, because of the "special characteristics of the school environment."[16] The Court held that schools have a special interest in regulating student conduct which "materially disrupts classwork or involves substantial disorder or invasion of the rights of others."[17] To satisfy this standard, schools must demonstrate that the speech in question actually caused, or may reasonably be forecast to cause, a "substantial disruption of or material interference with school activities."[18] In arriving at this decision, the Court balanced the students' freedom of expression against the need to maintain a safe, effective learning environment.[19]

Since *Tinker* was decided, the Supreme Court has recognized three narrow exceptions to the substantial disruption/material interference standard based on specific contents of student speech.[20]  These exceptions cover (1) "indecent," "lewd," or "vulgar" speech uttered during a school assembly on school grounds;[21] (2) speech that promotes "illegal drug use" at

[14] 393 U.S. 503 (1969).

[15] *Id.* at 506.

[16] *Id.* at 506, 512–13.

[17] *Id.* at 513.

[18] *Id.* at 514.

[19] *Id.*

[20] *Bell v. Itawamba Cty. Sch. Bd.*, 799 F.3d 379, 390 (5th Cir. 2015) (en banc).

[21] *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 275, 683 (1986).

a school-sponsored event;[22] and (3) speech that others may reasonably perceive as "bear[ing] the imprimatur of the school," such as speech in a school-sponsored newspaper.[23] In all three cases, the Court affirmed the schools' right to censor the speech at issue without providing a forecast of substantial disruption.[24] In justifying these carveouts, the Court explained that "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings."[25]

The Supreme Court more recently offered guidance for off-campus speech in its June 2021 decision in *Mahanoy Area School District v. B.L. ex rel Levy*.[26] In that case, the Court held that a disgruntled cheerleader's off-campus Snapchat posts, which stated "F[ ]ck school f[ ]ck softball f[ ]ck cheer f[ ]ck everything," were constitutionally-protected speech.[27] The Court explained that there are "three features of off-campus speech" which "diminish the strength of the unique educational characteristics that might call for special First Amendment leeway."[28] These features are: (1) "a school, in relation to off-campus speech, will rarely stand *in loco parentis*"; (2) "regulations of off-campus speech, when coupled with regulations of on-campus speech, include all the speech a student utters during the full 24-hour day"; and (3) "the school itself has an interest in protecting a student's unpopular expression, especially when the expression takes place off campus."[29] The Court declined to adopt a bright line rule or test to

---

[22] *Morse v. Frederick*, 551 U.S. 393, 409 (2007).

[23] *Hazelwood v. Kuhlmeier*, 484 U.S. 260, 271 (1988).

[24] *Morse*, 551 U.S. at 409; *Hazelwood*, 484 U.S. at 271; *Fraser*, 478 U.S. at 683.

[25] *Morse*, 551 U.S. at 396–97 (quoting *Fraser*, 478 U.S. at 682).

[26] 141 S. Ct. 2038 (2021).

[27] *Id.* at 2043.

[28] *Id.* at 2046.

[29] *Id.*

distinguish protected versus unprotected off-campus speech, noting that "[w]e leave for future cases to decide where, when, and how these features mean the speaker's off-campus location will make the critical difference."[30]

In the decades since *Tinker*, this court has grappled with whether—and to what extent—*Tinker* applies to off-campus speech. The ubiquity of social media has blurred the lines between off- and on-campus speech, causing increased difficulty for schools and parents alike. We have addressed the reach of *Tinker* to off-campus speech in three key cases: *Porter v. Ascension Parish School Board*[31] (2004); *Bell v. Itawamba County School Board*[32] (2015); and *Longoria ex rel M.L. v. San Benito Independent Consolidated School District*[33] (2019).

In *Porter*, we applied *Tinker* to the disciplinary action taken for a sketch drawn off-campus depicting a violent siege of a school.[34] The sketch was drawn by a former student at his home and was inadvertently brought to campus by his younger brother two years later, where it was discovered by school officials.[35] As a result, the younger brother was suspended, and the older brother was summoned to the office of his high school's resource officer, where a search of his bookbag revealed a box cutter, a fake ID, and notebooks containing disturbing depictions.[36] The high school officials recommended expulsion, and the older brother was jailed for four days for "terrorizing the school and carrying an illegal weapon." This court held that the sketch was constitutionally-protected because it was: (1) created and

---

[30] *Id.*

[31] 393 F.3d 608, 618 (5th Cir. 2004).

[32] 799 F.3d 379 at 401–02.

[33] 942 F.3d 258, 264 (5th Cir. 2019).

[34] 393 F.3d at 611, 619.

[35] *Id.* at 611–12.

[36] *Id.* at 612.

stored off-campus, (2) displayed only to the artist's family members, and (3) not intentionally taken on-campus or "publicized in a way certain to result in its appearance" at the school.[37] We also held that the school principal was entitled to qualified immunity, concluding that Porter's free speech rights had not been clearly established at the time of the incident, given the "unsettled nature of First Amendment law as applied to off-campus student speech inadvertently brought on campus by others."[38] This court went on to note that, even if Porter's rights were clearly established during the relevant timeframe, the principal's determination was objectively reasonable.[39] We explained that "qualified immunity recognizes that school officials, such as Principal Braud, must be allowed to make reasonable mistakes when forced to act in the face of uncertainty."[40]

In *Bell*, this circuit held, en banc, that *Tinker* definitively applied to off-campus speech directed at the school community.[41] *Bell* involved a student who created and posted a rap video to his personal Facebook and YouTube pages while he was off-campus, resulting in his suspension.[42] The video contained threats, profanity, and intimidating language directed at two teachers in the student's school.[43] Qualified immunity was not contested on appeal, so we only examined whether the student's speech was constitutionally protected.[44] In applying *Tinker*'s "substantial disruption" test, this court focused on the nexus between the speech in question and the

---

[37] *Id.* at 620.

[38] *Id.*

[39] *Id.* at 621.

[40] *Id.*

[41] 799 F.3d at 383.

[42] *Id.* at 383–84.

[43] *Id.* at 384.

[44] *Id.* at 389.

school community.[45] Concluding that the student had intentionally directed the video at the school community, we held that "a school official reasonably could find Bell's rap recording threatened, harassed, and intimidated the two teachers; and a substantial disruption reasonably could have been forecast, as a matter of law."[46] We further noted that the school's Administrative Policy "demonstrates an awareness of *Tinker*'s substantial-disruption standard, and the policy's violation can be used as evidence supporting the reasonable forecast of a future substantial disruption."[47] We acknowledged that our "precedent is less developed" regarding off-campus speech, but declined to adopt a specific rule to apply moving forward.[48]

Recently, in *Longoria*, this circuit decided an off-campus speech dispute on the basis of qualified immunity.[49] *Longoria* involved a former head varsity cheerleader who was disciplined by her school for posting profanity and sexual innuendo on her personal Twitter account.[50] The cheerleader asserted that her Tweets were constitutionally protected because they were posted off-campus and were not directed at the school community.[51] We first analyzed whether the cheerleader's free speech rights were clearly established during the relevant timeframe.[52] Recognizing that we had recently declined to adopt a "specific rule" applicable to all off-campus speech, this court held that the cheerleader's First Amendment rights were

---

[45] *Id.*

[46] *Id.* at 391.

[47] *Id.* at 399.

[48] *Id.* at 394.

[49] 942 F.3d at 261.

[50] *Id.*

[51] *Id.* at 264.

[52] *Id.* at 265.

not clearly established.[53] We chose to forego the constitutional-violation inquiry, holding that the school officials were entitled to qualified immunity.[54] Referencing *Bell*, this court noted that "the 'pervasive and omnipresent nature of the internet'" raises difficult questions about what it means for a student using social media to direct his or her speech towards the school community.[55] We further explained that "a more defined rule will be left for another day."[56]

### ii.    *Qualified Immunity as to Hull*

In this appeal, McClelland contends that the district court erred in holding that Hull, KHS's principal during the relevant timeframe, was entitled to qualified immunity. Citing no case law in support, McClelland alleges that his First Amendment rights were clearly established at the time of the Snapchat incident. McClelland further asserts that the district court incorrectly based its qualified immunity analysis on whether the violation of McClelland's rights was based on the Athletic Code of Conduct ("ACC"). McClelland contends that, in doing so, the district court "overlooked the plainly alleged and pleaded violations of the First Amendment in retaliation and compelled speech."

### 1.    Whether McClelland's free speech rights were clearly established

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood]

---

[53] *Id.* at 267.

[54] *Id.* at 270–71.

[55] *Id.* at 269–70 (quoting *Bell*, 799 F.3d at 395, 403).

[56] *Id.*

that what he is doing violates that right.'"[57] Courts "do not require a case directly on point," but school officials are entitled to qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate."[58] In other words, if "insufficient precedent existed to provide school officials with 'fair warning' that the defendants' conduct violated the First Amendment," the rights were not clearly established.[59]

Here, the district court first analyzed whether McClelland's First Amendment free speech rights were clearly established at the time of the Snapchat incident. That court reviewed relevant First Amendment jurisprudence and concluded that the Supreme Court and the Fifth Circuit had not clearly demarcated the limits of off-campus speech regulation. Quoting *Longoria*, the district court noted that "the Fifth Circuit's cases have 'failed to clarify the law governing school officials' actions in disciplining off-campus speech.'"[60] The district court concluded that "there was no general rule that could have placed Defendants on notice that it would be unconstitutional to discipline Mr. McClelland for his off-campus speech." Specifically, the court held that there was no clearly established rule stating that discipline for a "threat of violence apparently stated in jest" is unconstitutional. The district court went on to hold that the individual Defendants-Appellees were entitled to qualified immunity and did not reach the merits of whether McClelland's free speech rights were violated.[61]

---

[57] *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[58] *Id.*

[59] *Jackson v. Ladner*, 626 F. App'x 80, 89 (5th Cir. 2015).

[60] (quoting *Longoria*, 942 F.3d at 267).

[61] The district court did not address whether the individual Defendants-Appellees were entitled to qualified immunity as to McClelland's First Amendment compelled speech and retaliation claims. This is because McClelland abandoned these claims by failing to defend them in his opposition to the motion to dismiss, which is discussed further below.

The district court correctly concluded that there is no clearly established rule that could have placed Hull on notice that disciplining McClelland for his off-campus speech was unconstitutional. Our developing jurisprudence has not yet resulted in a rule that would have given fair warning to Hull and to "every 'reasonable official'"[62] in Hull's position that suspending McClelland for his video was unconstitutional. Even *Mahanoy*, which was decided after the underlying incidents here, offers little assistance. In *Mahanoy*, the Supreme Court held that "[w]e leave for future cases to decide where, when, and how these features mean the speaker's off-campus location will make the critical difference."[63] Here, McClelland's free speech rights at the time of the Snapchat incident were not clearly established so as to defeat qualified immunity for Hull.

### 2.    Whether McClelland's speech was constitutionally-protected

The district court ended its qualified immunity analysis after concluding that McClelland's free speech rights were not clearly established in relation to the Snapchat incident. As discussed above, it is entirely within the district court's discretion to forego the constitutionality question after concluding that the rights at issue are not clearly established.[64] The district court did not err in choosing to forego the constitutional inquiry.

This court too may forego the more difficult constitutional inquiry. When the Supreme Court relaxed its strict adherence to the two-part qualified immunity protocol, it noted that engaging in the constitutional

---

[62] *Ashcroft*, 563 U.S. at 741 (quoting *Anderson*, 483 U.S. at 640); *see also Longoria*, 942 F.3d at 269–70.

[63] 141 S. Ct. at 2046.

[64] *See, e.g.*, *Pearson*, 555 U.S. at 241; *Camreta*, 563 U.S. at 707; *Morgan*, 659 F.3d at 384.

inquiry may be advantageous in some situations and detrimental in others.[65] For example, it is helpful in the development of constitutional precedent and "especially valuable for questions that do not frequently arise in cases in which a qualified immunity defense is unavailable."[66] At the pleading stage, however, this inquiry "may create a risk of bad decisionmaking,"[67] since "the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed."[68] In *Longoria*, for example, we chose to forego the constitutional question altogether after determining that the student's rights were not clearly established.[69] *Longoria* also involved the review of a motion to dismiss.

Here, the district court's determination of qualified immunity as to defendant-appellee Hull was sound. This court will not engage in the constitutional inquiry because (1) it is evident that McClelland's free speech rights were not clearly established at the time of the incident; and (2) the underlying case was disposed of at the motion-to-dismiss stage, before the facts were developed.

### 3. McClelland's First Amendment retaliation and compelled speech claims against Hull

McClelland correctly points out that the district court did not examine his First Amendment retaliation and compelled speech claims in its memorandum and order dismissing this case. Defendants-Appellees contend that McClelland abandoned these claims by failing to defend or reassert them in his opposition to the motion to dismiss and subsequent briefing. In fact, McClelland did not defend or clearly mention these claims in his opposition

---

[65] *Pearson*, 555 U.S. at 239–40.

[66] *Id.* at 236.

[67] *Id.* at 239.

[68] *Id.* (quoting *Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 70 (1st Cir. 2002)).

[69] 942 F.3d at 265.

to the motion to dismiss, his supplemental reply regarding qualified immunity, or his motion to alter or amend the district court's judgment. McClelland asserts that he never abandoned these claims, and that he did not brief them in his response to the motion to dismiss because Defendants-Appellees only alluded to them in their motion to dismiss. However, in their motion to dismiss, Defendants-Appellees clearly stated that they were "mov[ing] to dismiss all of Plaintiff's claims" and even listed "free speech retaliation" as one of those claims.

This circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings.[70] Here, McClelland failed to defend or reassert his retaliation and compelled speech claims on three separate occasions prior to this appeal. Defendants-Appellees moved to dismiss *all* claims, and the district court dismissed *all* claims in its judgment. McClelland thus abandoned his First Amendment retaliation and compelled speech claims on appeal.

### iii.    *Sovereign Immunity as to the KISD Board*

Under 42 U.S.C. § 1983, municipalities cannot be held vicariously liable for the acts of their employees unless the plaintiff's allegations satisfy particular requirements.[71] In *Monell v. Department of Social Services*, the Supreme Court held that a plaintiff asserting municipal, or "*Monell*," liability must demonstrate that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a

---

[70] *See, e.g.*, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned claim by failing to defend it in response to motion to dismiss); *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) ("The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes waiver on appeal."); *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) (defendant abandoned limitations defense by failing to raise it in summary judgment response).

[71] *Monell v. Dept. Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978).

constitutional right."[72] Since "the identity of the policymaker is a question of law . . . a plaintiff is not required to single out the specific policymaker in his complaint."[73] The "plaintiff need only plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker."[74] Here, the parties agree that Texas law establishes the KISD Board as KISD's final policymaker.[75]

McClelland argues that he sufficiently pleaded *Monell* liability because he alleged facts that allowed the district court "to reasonably infer that the Board either (1) adopted policy that caused injury or (2) delegated to a subordinate officer authority to adopt such a policy." McClelland contends that, by adopting the ACC, the KISD Board "was directly involved" in violating his constitutional rights. He points out that, at the motion-to-dismiss stage, he only needed to plead that the ACC was ratified or promulgated by the KISD Board. Finally, McClelland asserts that he pleaded facts demonstrating that KISD's public announcement "*was signed by Katy ISD* and announced that discipline to be meted out was *due to official policy*" of the KISD Board. He thus contends that the district court erred in holding that the KISD Board was entitled to sovereign immunity.

The district court analyzed whether the KISD Board could be held liable vicariously for the acts of the individual Defendants-Appellees under *Monell*. That court examined the first and second prongs of *Monell*, looking for "facts that sufficiently connect the policy maker—here, the Board of

---

[72] *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)).

[73] *Groden v. City of Dallas, Texas*, 826 F.3d 280, 282 (5th Cir. 2016).

[74] *Id.*

[75] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (explaining that "whether a particular official has 'final policymaking authority' is a question of *state law*") (internal citation omitted).

Trustees—to the allegedly unconstitutional policy," and concluded that McClelland had not pleaded facts connecting the KISD Board to the alleged violations of his First Amendment rights. Citing *Longoria*, the district court explained that McClelland did not plead facts demonstrating that the KISD Board had delegated policymaking authority to the individual Defendants-Appellees, who were, at best, "decisionmakers." The court explained that McClelland's allegations "fail to meet the requirement that Defendants themselves exercise policymaking authority."

The district court correctly concluded that the KISD Board cannot be held liable vicariously for the individual Defendants-Appellees' actions. *Monell* instructs district courts to examine whether the policymaker either adopted an injury-causing policy or delegated the authority to adopt such a policy.[76] The policy at issue here is the ACC, a copy of which was attached to McClelland's complaint. McClelland did not allege facts demonstrating that the KISD Board had ratified the ACC, and the ACC itself does not indicate that it was ratified by the Board. In fact, the ACC appears to distinguish itself from "the board-approved *Discipline Management Plan and Student Code of Conduct*." McClelland has also failed to show that KISD's signature on its October 4, 2019 announcement constituted ratification or delegation. That announcement simply stated that a student would face consequences pursuant to the ACC and the Katy ISD Discipline Management Student Code of Conduct. McClelland did not allege any other facts that show the KISD Board had delegated policymaking authority to the individual Defendants-Appellees in connection with the disciplinary action. Therefore, McClelland has not shown that the KISD Board promulgated a policy that caused injury, so the KISD Board cannot be held liable for violations of McClelland's free speech under *Monell*.

---

[76] *Groden*, 826 F.3d at 286.

### B.      McClelland's constitutional overbreadth claim

"A regulation is constitutionally overbroad if it (1) prohibits a substantial amount of constitutionally-protected freedoms, when judged in relation to the regulation's 'plainly legitimate sweep' . . . and (2) is not susceptible to a limiting construction that avoids constitutional problems."[77] The overbreadth doctrine recognizes that "a broadly-written statute may have such a deterrent effect on free expression that it should be subject to a facial challenge even by a party whose own conduct may be unprotected."[78] In other words, that doctrine "enables a plaintiff to challenge a statute where it infringes on *third parties* who are not parties to the action."[79] However, an overbreadth claim is "not permitted where a party raises only situations that are essentially coterminous with their own conduct."[80]

McClelland asserts that particular provisions of the ACC are overbroad in violation of the First Amendment. McClelland points out that the ACC requires student athletes "to display/model behaviors associated with positive leaders both in the school and in the community" and "exhibit good citizenship at all times." Citing *Mahanoy*, McClelland takes issue with the fact that these provisions pertain to both on- and off-campus conduct. McClelland alleges that another student-athlete could find himself in the same disciplinary situation, "<u>even if</u> that student-athlete engaged in other activities (i.e. not using a racially-charged term)." McClelland concludes that

---

[77] *Chalifoux v. New Caney Indep. Sch. Dist.*, 976 F. Supp. 659, 669 (S.D. Tex. 1997) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973); *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987)).

[78] *Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 499 (5th Cir. 1989); *see also Broadrick*, 413 U.S. at 612 (explaining that the overbreadth doctrine prohibits the government from banning unprotected speech if a substantial amount of protected speech would be chilled in the process).

[79] *Chalifoux*, 976 F. Supp. at 669.

[80] *Seals v. McBee*, 898 F.3d 587, 599 (5th Cir. 2018) (internal quotation marks and citation omitted).

"the possibility and potential for wide-sweeping and heavy-handed regulation of student-athlete's speech outside the school doors is distressingly obvious."

The district court dismissed McClelland's overbreadth claim, concluding that his allegations only "contain[] a general statement of the law on overbreadth challenges, untethered to the well-pleaded facts that could survive a Rule 12(b)(6) motion." The district court stressed that McClelland failed to show that the rights of third parties would be threatened in situations that are different from his own.

The district court correctly analyzed McClelland's overbreadth claim and did not err in dismissing it. The Supreme Court has instructed that a plaintiff who asserts an overbreadth claim must show that a challenged policy prohibits a "broad range of protected conduct," and that there must be "a realistic danger that the [policy] itself will significantly compromise recognized First Amendment protections of parties not before the Court."[81] McClelland has only shown that his own conduct (which is arguably unprotected) is prohibited by the ACC. Additionally, his second amended complaint is devoid of facts demonstrating that the ACC is so overreaching that it will infringe on other student-athletes' free speech rights. His complaint only seeks a declaration that the ACC is "overbroad and constitute[s] viewpoint discrimination." The district court did not err in dismissing McClelland's overbreadth claim.

## C.    McClelland's void-for-vagueness claim

"A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory

---

[81] *City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 801 (1984).

enforcement."[82] This standard is heightened in the context of education, "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process."[83] A regulation is void for vagueness when it is so unclear that people "of common intelligence must necessarily guess at its meaning and differ as to its application."[84] This circuit's precedent instructs that a facial challenge may only be sustained "if the enactment is impermissibly vague in all of its applications."[85] Since a void-for-vagueness challenge is ultimately a due-process claim,[86] a plaintiff must allege that he was deprived of a constitutionally-protected property or liberty interest.[87]

McClelland asserts that the ACC is void for vagueness because particular provisions "were unduly and unconstitutionally vague." He specifically alleges that the provisions requiring student-athletes to "conduct [themselves] as gentlemen and ladies at all times"; "exhibit good citizenship at all times"; and "display/model behaviors associated with positive leaders both in the school and in the community" are unconstitutional. McClelland asserts that the district court erred by not analyzing the merits of vagueness, instead deciding this question on the existence of a protected property interest.

The district court did not reach either the merits of vagueness or whether a facial challenge to the ACC could be sustained. Instead, that court

---

[82] *A.M ex rel. McAllum v. Cash*, 585 F.3d 214, 224–25 (5th Cir. 2009) (quoting *Women's Med. Ctr. of N.W. Houston v. Bell*, 248 F.3d 411, 421 (2001)).

[83] *Fraser*, 478 U.S. at 676.

[84] *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

[85] *Home Depot, Inc. v. Guste*, 773 F.2d 616, 627 (5th Cir. 1985) (quoting *Vill. of Hoffman Ests. v. Flipside*, 455 U.S. 489, 495 (1982)).

[86] *Cash*, 585 F.3d at 225.

[87] *Longoria*, 942 F.3d at 270 (citing *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999)).

analyzed whether McClelland had properly alleged the deprivation of protected property or liberty interests as a result of the ACC. The district court referenced *Chalifoux v. New Caney Independent School District*, which held that vagueness may only be invoked in the educational context when students "faced a potential deprivation of their property interests in attending a public school."[88] The district court concluded that McClelland had failed to state a claim for vagueness since "[n]either participation in football nor team captainship constitutes a property or liberty right of which Plaintiff was deprived."

The district court correctly analyzed McClelland's void-for-vagueness claim and did not err in dismissing it. It is well settled, in the educational context, that a plaintiff *must allege* a protected property interest. McClelland's second amended complaint is devoid of any such allegations. And, even if he had alleged lack of participation on the football team or team captainship in connection with vagueness, he still would not prevail. This court has held that "[a] student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement."[89]

### D.    McClelland's procedural and substantive due process claims

The Fourteenth Amendment provides that state actors may not deprive "any person of life, liberty, or property without due process of law."[90] "The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty."[91] Moreover, "[t]o have a property

---

[88] 976 F. Supp. at 668.

[89] *Walsh v. La. High Sch. Athletic Ass'n*, 616 F.2d 152, 159 (5th Cir. 1980).

[90] U.S. Const. amend. XIV.

[91] *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017).

interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . [He] must, instead, have a legitimate claim of entitlement to it."[92]

In his second amended complaint, McClelland alleged that KISD, Gregorski, Hull, and Graham violated his due process rights throughout the marijuana-related disciplinary process and his resulting placement in the DAEP. He now appeals the district court's dismissal only as to KISD. McClelland asserts that KISD violated his due process rights by imposing discipline "without establishing the three required elements of the charged statute: usable quantity, intent to possess, and that the substance was properly tested, prior to imposing discipline, to be certain that the substance was legally marijuana as opposed to hemp." McClelland claims that KISD's "wrongful conviction" resulted in the destruction of his liberty interests. He also alleges that his due process rights were violated when KISD reinstated the discipline that it had imposed before he attempted to transfer schools. McClelland takes issue with the fact that the district court did not analyze the merits of his due process claims, instead basing its opinion on whether McClelland had alleged a deprivation of protected interests.

We disagree with McClelland. The district court first analyzed whether he had sufficiently alleged deprivation of his property and liberty interests. In doing so, the court looked to *Nevares v. San Marcos Consolidated Independent School District*, in which this circuit held that a student's placement in an alternative education program violated no protected property interest.[93] The district court also relied on this circuit's opinion in *Doe v. Silsbee Independent School District*, which held that students "do not possess a constitutionally protected interest in their participation in

---

[92] *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

[93] 111 F.3d 25, 26–27 (5th Cir. 1997).

extracurricular activities."[94] The district court concluded that this circuit's well-settled precedent instructed against finding any violation of a protected property or liberty interest on the basis of McClelland's placement in DAEP or his suspension from the football team.

The district court did not err in dismissing McClelland's substantive and procedural due process claims because McClelland did not allege the deprivation of his property or liberty interests. As noted above, this circuit has held that students do not have a protected property or liberty interest in participating in extracurricular activities.[95] We have also held that students are not deprived of a protected property or liberty interest when they are placed in alternative education programs, such as the DAEP.[96] McClelland thus failed to allege the deprivation of a protected property or liberty interest, so the district court did not need to reach the merits of his procedural or substantive due process claims.

## V. CONCLUSION

We AFFIRM the district court's dismissal of McClelland's (1) 42 U.S.C. § 1983 claims against Defendants-Appellees on the basis of qualified and sovereign immunity; (2) overbreadth and void-for-vagueness claims; and (3) substantive and procedural due process claims.

---

[94] 402 F. App'x 852, 854 (5th Cir. 2010) (quoting *NCAA v. Yeo*, 171 S.W.3d 863, 865 (Tex. 2005)).

[95] *Id.*

[96] *Nevares*, 111 F.3d at 26-27; *see also Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011) ("A student's transfer to an alternate education program does not deny access to public education and therefore does not violate a Fourteenth Amendment interest.").