**Affirmed and Opinion filed August 29, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00432-CV

---

## BRONSON MCCLELLAND, COLBURN MCCLELLAND, AND ANGIE MCCLELLAND, Appellants

### V.

## KATY INDEPENDENT SCHOOL DISTRICT, KENNETH GREGORSKI, RICK HULL, AND JUSTIN GRAHAM, Appellees

---

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 22-DCV-290815**

---

## OPINION

Appellants Bronson McClelland, a former student in the Katy Independent School District, and his parents (collectively, appellants) sued the District for breach of a settlement agreement related to Bronson's placement in a disciplinary alternative education program (DAEP). Appellants also sued three of the District's employees in their official capacities for ultra vires acts. The trial court granted the District and employees' plea to the jurisdiction based on governmental immunity.

Appellants contend that the trial court erred in four overlapping issues. We hold that the settlement agreement was not "reached to dispose of a claim" for which the District had waived immunity, and the ultra vires claims fail as a matter of law. Accordingly, the trial court's judgment is affirmed.

## I. STANDARD OF REVIEW AND LEGAL PRINCIPLES FOR JURISDICTION

Sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006). A school district and its employees sued in their official capacities are protected from suit if immunity has not otherwise been waived. *See id.* at 324 ("A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature."); *see also Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011) (noting the general rule that a suit against an employee in their official capacity is a suit against the governmental employer).

Governmental immunity from suit implicates a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 751 (Tex. 2017). Whether a court has subject matter jurisdiction is a question of law reviewed de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004).

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate jurisdiction. *Id.* at 226. We construe the pleadings liberally in favor of the plaintiffs and look to their intent. *Id.*

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue raised. *Id.* at 227. If the challenge implicates the merits of the plaintiffs' claims and creates a fact issue, then a court may not grant the plea, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. This standard generally mirrors that for a summary judgment. *Id.* at 228. Although we take as true all evidence favorable to the plaintiff and indulge reasonable inferences in their favor, we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018).

When, as here, a plea to the jurisdiction challenges every claim asserted in the petition, we review jurisdiction on a claim-by-claim basis. *See City of Houston v. Guthrie*, 332 S.W.3d 578, 587 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Thomas v. Long*, 207 S.W.3d 334, 338–39 (Tex. 2006)).

## II. BACKGROUND

In October 2019, Bronson was the captain and quarterback for the Katy High School football team. After defeating a rival team, Bronson and other students from both schools went to a local restaurant where they exchanged taunts in person and through Snapchat, a social media application. Bronson made a three-second Snapchat video in which he stated, "[We'll] put your motherfucking ass in the hospital, nigga. What the fuck?" He sent the video to a student from the opposing school, who then forwarded it to someone else, who then posted it on the Internet for a wider audience.

Appellee Rick Hull, the principal of Katy High School, disciplined Bronson by stripping him of his captainship and suspending Bronson for two games. The

3

District released a public statement indicating that Bronson would be disciplined for using "racially charged language to taunt a student athlete on the opposing team." Appellants sought, unsuccessfully, to have the District retract and correct the statement because Bronson's video was not directed to a student athlete on the opposing team. In September 2020, after appellants exhausted all administrative remedies "to have Katy ISD correct their public statement," appellants agreed to provide the District an "extension to respond to Plaintiff's demands to resolve the false statement issue." Appellants indicated that they "would pursue legal remedies."

Soon thereafter, a District police canine unit alerted to Bronson's car, which he shared with his older brother. Upon searching the car, police found .04 grams of a green leafy substance later identified as marijuana. Bronson was immediately suspended for three days and placed in DAEP for forty-five days. Appellants claim that the District was disciplining Bronson "as leverage and retaliation for his continued effort to hold the district responsible for its inaccurate and defamatory statement in 2019."

A week later, appellants and the District entered into a settlement agreement. The District agreed to:

1. abate/overturn the Campus Level decision for discipline related to a Level IV infraction for possession of a substance prohibited from being present at a KISD facility which allegedly occurred on or about September 17, 2020.

2. provide the Family with the attached letter concerning the status of the discipline. If asked about discipline by another education institution out of the State of Texas, Katy ISD will refer them to the letter and indicate that no discipline consequences remain.

3. have the District's Athletic Director, Katy High School's head football coach and Katy High School's principal execute the two

4

attached documents that indicate there is currently no disciplinary proceedings pending between Katy High School and the Family.

Appellants agreed to release all claims related to Bronson's time as a student in the District. The term "claims" was broadly defined and included claims brought under 42 U.S.C. § 1983.[1] In their petition, appellants contend that the release included "the 2019 issue related to the punishment for his off-campus speech under 42 U.S.C. § 1983."

Appellants agreed to withdraw Bronson from enrollment in the District on the same day. Appellants agreed that Bronson "is or has moved out of the State of Texas and does not intend to move back or re-enroll at Katy ISD." Appellants agreed:

> The Family understands that the discipline is being abated; however, if Bronson McClelland re-enrolls at Katy ISD in the future, that abatement will be null and void and the student will be required to finish the assigned time in the discipline alternative campus (DAEP). Should this happen, the family would still be permitted to a hearing in front of a District Level Committee as defined by the Student Discipline Management plan. This is the same hearing process that was scheduled for September 29, 2020.

Appellee Gregorski signed this agreement on behalf of the District as its superintendent.

---

[1] "Claims" was defined as:

> any and all theories of recovery of whatsoever nature which the Family may have asserted, or could have asserted, against the District, including, but not limited to, any and all other theories ever alleged, currently alleged or that might have been alleged and the facts and events giving rise thereto. In this regard, the term "claims" related to Bronson's time as a student in the District includes, but is not limited to, discipline referrals, Chapter 37 of the Texas Education Code, claims regarding the settlement negotiations, claims of harassment and/or violations of and/or or claims arising under the Civil Rights Act, 42 U.S.C. § 1983, et seq.; Americans with Disabilities Act, 42 U.S.C. § 12201, et seq., Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, et seq.

The District provided appellants a letter signed by Gregorski. In the letter, which is included in full in Appendix A of this opinion, Gregorski concludes that "the discipline given to Bronson McClelland on September 17, 2020 is overturned and no disciplinary matters are pending."

In the process of attempting to transfer Bronson to a school in California, the District provided a transcript to the new school showing Bronson was assigned to the Opportunity Awareness Center, a school in the District where DAEP assignments are fulfilled. This error in the transcript caused the new school to refuse to accept Bronson as a student. When appellants attempted to transfer Bronson to another school in Texas, a District employee signed additional forms indicating that Bronson had never been suspended or removed from the athletic program and would not be prohibited from participating in the athletic program. Bronson was denied eligibility to participate in athletics at this school due to residency requirements, and Bronson re-enrolled at Katy High School.

Gregorski, Hull, and Graham "initiated an additional 'appeal' on November 6, 2020." They determined that Bronson had possessed marijuana and placed him back in DAEP, which prevented Bronson from returning to Katy High School and playing football during his senior season.

In this case, appellants sued the District for breach of contract and a declaratory judgment based on "estoppel." Appellants alleged a breach of contract because the District (1) failed to initially provide a correct transcript to the California school and instead sent documents showing that Bronson was placed in DAEP; and (2) held an additional hearing and disciplined Bronson after choosing to "overturn" the discipline.

Against the employees Gregorski, Hull, and Graham in their official capacities, appellants asserted declaratory judgment ultra vires claims based on the

6

employees' (1) subjecting Bronson to a second appeal, which was not permitted under Texas law; and (2) ignoring legal standards required for possession of marijuana.

Appellees filed a plea to the jurisdiction based on governmental immunity for each of appellants' claims. After appellants responded and amended their petition, the trial court granted the plea and dismissed appellants' claims with prejudice.

## III.  BREACH OF CONTRACT

Appellants contend that the trial court erred by granting the plea on appellants' contract claim because appellants released a Section 1983 claim—a claim for which the District was not immune—in the settlement agreement.

The general rule in Texas is that a governmental entity such as the District retains immunity from suit for breach of contract, including breach of a settlement agreement. *See Tex. A & M Univ.–Kingsville v. Lawson*, 87 S.W.3d 518, 521 (Tex. 2002) (plurality op.). However, a plurality of the Supreme Court of Texas has held that when the Legislature waives immunity from suit for a particular claim, a governmental unit does not have immunity from a "suit brought to enforce a settlement agreement reached to dispose of a claim" for which immunity was waived. *See id.* at 522–23.

Under the *Lawson* plurality, the key issue is whether the settlement agreement was "reached to dispose of a claim" for which the District does not enjoy immunity. The answer to this question in *Lawson* was easy: the plaintiff asserted a Whistleblower Act claim; the trial court denied a plea to the jurisdiction on that claim; and then the parties settled the claim—the governmental unit agreed to pay the plaintiff money and to only provide certain information to other

7

potential future employers. *See id.* at 518–19. The settlement agreement was reached to dispose of a claim for which there was no immunity, so a claim based on a breach of that settlement agreement was not barred by immunity. *See id.* at 522–23.

Here, appellants contend that the *Lawson* rule applies because they released a Section 1983 claim in the settlement agreement—"specifically including Bronson's claim related to his 2019 punishment for off-campus speech under 42 U.S.C. § 1983." Under some circumstances, a Section 1983 claim against a school district would qualify as a claim for which the governmental unit does not have immunity. *See Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 178 (Tex. App.—Houston [14th Dist.] 1991, no writ) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)). Indeed, after the events giving rise to this lawsuit, Bronson pursued such claims, unsuccessfully, against appellees in federal court. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 348 (mem.).[2]

Appellants pleaded that the settlement agreement released a Section 1983 claim, but under *Lawson*, merely releasing a claim is not enough. Appellants have not pleaded or shown with any evidence that the settlement agreement was "reached to dispose of" a Section 1983 claim, i.e., that the settlement agreement

---

[2] We do not consider the merits of the Section 1983 claims or the federal litigation in this case. In determining that immunity was waived for breach of a settlement agreement, *Lawson* undertook no evaluation of the merits of the underlying Whistleblower Act claim, noting:

> A settlement of a claim trades unknowns—such as what the evidence will be, and how a jury will view it—for knowns—obligations that are more accurately assessable. In reaching a settlement, the government is guided by legal counsel to help gauge the degree of exposure to liability and the fairness of the settlement. Once the Legislature has decided to waive immunity for a class of claims, the inclusion of settlements within the waiver is consistent with that decision.

*Lawson*, 87 S.W.3d at 522.

was in some way an impetus for the disposal of a Section 1983 claim. For example, appellants have not pleaded or proved that they ever asserted—by lawsuit, demand letter, or otherwise—any Section 1983 claim against the District before entering into the settlement agreement or that a Section 1983 claim was even discussed amongst the parties. Appellants pleaded that the District initiated the 2020 DAEP placement "as leverage and retaliation for his continued effort to hold the district responsible for its inaccurate and defamatory statement in 2019," not that the discipline was initiated in retaliation for Bronson's off-campus speech. And, other than the broad definition of "claims" to include Section 1983 claims among other specific statutory claims, none of the subject matter of the settlement agreement relates to Bronson's off-campus speech from 2019 (or even the alleged defamatory statement by the District). All of the specific provisions relate to the DAEP placement resulting from the marijuana incident in 2020.

On this record, appellants have failed to plead a waiver of immunity for the contract claim or demonstrate a genuine issue of material fact regarding whether the settlement agreement was "reached to dispose of a claim" for which the District did not have immunity. To hold otherwise would allow the *Lawson* exception to swallow the rule that settlement agreements themselves do not waive governmental immunity because settlement agreements generally release all claims, broadly defined.

Appellants' issues regarding the District's immunity are overruled.[3]

## IV.   ULTRA VIRES

Appellants contend that the trial court erred by granting the plea on appellants' declaratory judgment claim against the employees in their official

---

[3] Appellants do not contend that the trial court erred by dismissing their estoppel-based claim against the District, so we do not address it. *See* Tex. R. App. P. 47.1.

capacities because they "subjected Bronson to a second appeal of the discipline matter" without legal authority, i.e., they acted ultra vires. Appellants contend that the letter contained in Appendix A of this opinion was a "final adjudication and independent of the settlement agreement," and the employees had no authority to countermand it.

A suit against a governmental officer seeking to require them to comply with the law is not barred by immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 371–72 (Tex. 2009). To fall within this ultra vires exception, a claimant must allege and prove that the officer "acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372.

To contend that the employees acted without legal authority, appellants rely on Section 37.009 of the Education Code concerning procedures for DAEP placement: "If school district policy allows a student to appeal to the board of trustees or the board's designee a decision of the campus behavior coordinator or other appropriate administrator, other than an expulsion under Section 37.007, the decision of the board or the board's designee is **final and may not be appealed**." Tex. Educ. Code § 37.009(a) (emphasis added). Appellants contend that Gregorski's letter was "a decision of the board or the board's designee," and thus, the employees' later decision overruling Gregorski's decision violated the statute's provision that the decision was "final and may not be appealed." We disagree with appellants for both factual and legal reasons.

As a factual matter, appellants ask this court to view Gregorski's letter out of context of the settlement agreement, which we cannot do. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018) ("[W]e cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not."). In the

agreement, the District agreed to (1) "abate/overturn" the campus-level DAEP decision, (2) "provide the Family with the attached letter concerning the status of the discipline," and (3) indicate to other educational institutions that "no discipline consequences remain." The agreement also provides that the abatement of discipline would be "null and void" if Bronson re-enrolled in the District, and Bronson would be required to "finish the assigned time in the discipline alternative campus (DAEP)." The agreement "permitted" appellants to have a hearing in front of a "district level committee."

Gregorski's "discipline appeal" letter must be viewed in context of this agreement. No reasonable juror could disregard the inference that Gregorski's letter was the one contemplated by the agreement, and thus, not a final "decision" by the District of Bronson's discipline under Section 37.009(a) of the Education Code. The agreement provides that the abatement of the discipline could be made "null and void" and Bronson required to finish his assigned time in DAEP if he were to re-enroll in the District. This provision was self-executing and merely "permitted" appellants to have a district-level hearing, which is what ultimately happened.

As a legal matter, we note that appellants cite no case law interpreting Section 37.009's "final and may not be appealed" clause. Our research has revealed only cases determining that this language prohibits a suit for judicial review by the student; not that that Section 37.009 prohibits a school board from reevaluating its own discipline decisions. *See Nw. Indep. Sch. Dist. v. K.R.*, No. 02-20-00067-CV, 2020 WL 4907331, at *4 (Tex. App.—Fort Worth Aug. 20, 2020, no pet.) (mem. op.) ("Texas courts have interpreted this section to mean just what it says—district and appellate courts have no jurisdiction to review the decision to place a student in DAEP." (quoting *Stephens v. Trinity Indep. Sch.*

11

*Dist.*, No. 12-12-00094-CV, 2012 WL 5289346, at *2 (Tex. App.—Tyler Oct. 24, 2012, no pet.) (mem. op.))).  Thus, even if there were a genuine issue of material fact about whether Gregorski's letter was a decision by the school board under Section 37.009(a), it would not be an ultra vires act for the District to reevaluate the decision consistent with the settlement agreement.[4]

Accordingly, appellants have not adequately pleaded or raised a genuine issue of material fact about whether the employees acted without legal authority when they reinstated Bronson's DAEP under the settlement agreement and permitted a district-level committee hearing.

Appellants' issues regarding the employees' immunity are overruled.

## V.  CONCLUSION

Having overruled all of appellants' issues, we affirm the trial court's judgment.

/s/      Ken Wise
Justice

Panel consists of Justices Wise, Bourliot, and Spain.

---

[4] We find unpersuasive appellants' analogizing to cases applying the doctrine of res judicata, *see, e.g.*, *Mayfield Co. v. Rushing*, 133 Tex. 120 (1939), a case holding that parties could not agree to extend the time for judicial review, *see Moss v. Dallas Indep. Sch. Dist.*, 12 S.W.3d 168 (Tex. App.—Dallas 2000, no pet.), or a statute related to substantial-evidence review when teachers complain about termination or suspension, *see* Tex. Educ. Code §§ 21.251, 21.259.

## Appendix A: Gregorski Letter



Ken Gregorski, Ed.D.
SUPERINTENDENT

Katy Independent School District

September 28, 2020

Colburn McClelland
7019 Prairie Grass Ln,
Katy, Texas 77493

**VIA ELECTRONIC MAIL**

Re: **Discipline Appeal**

<u>Please note that this letter references student discipline, which is confidential by federal law.</u>

Dear Mr. McClelland:

As is required at Katy ISD, the District has reviewed the alleged conduct of Bronson McClelland on September 17, 2020. In reviewing such discipline, Texas law requires that the District consider six factors, which include the "intent or lack of intent at the time the student engaged in the conduct" and the "student's disciplinary history." In light of these provision, I have determined the following.

On September 17, 2020, the District conducted a routine search of one of our high school parking lots. During that search, the canine alerted the vehicle driven to school by Bronson McClelland that morning. A search of the vehicle found an unusable amount of a substance that was field tested to contain THC. However, the District did not test the substance to determine whether the requisite amount of THC was present that would have indicated the substance was in fact marijuana as prescribed by Texas law.

During the campus level hearing, Bronson denied that the substance was his and his older brother came forward to give his account. His brother had recently totaled his personal vehicle and was temporarily using Bronson's vehicle. His brother admitted that the substance was his. Unlike Bronson, the brother has a history of marijuana related incidents and charges which are well known. Bronson does not have any past drug related charges or incidents that the District is aware of.

As such, I have determined that Bronson did not intend to possess the substance on campus. Therefore, the discipline given to Bronson McClelland on September 17, 2020 is overturned and no disciplinary matters are pending.

Regards,

Dr. Ken Gregorski
SUPERINTENDENT
KATY INDEPENDENT SCHOOL DISTRICT

MCCLELLAND     Katy Independent School District • 6301 South Stadium Lane • Katy, Texas 77494
281.396.6000 • fax: 281.644.1800 • www.katyisd.org     Page 1 of 1

13