# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 1, 2023

Lyle W. Cayce
Clerk

———————

No. 22-50102

———————

SHANON EDMISTON, *Individually*; HELEN HOLMAN, *as dependent administrator of*, and *on behalf of*, LISA WILLIAMS *a/k/a* LISA SCHUBERT, E.S., J.S. *#1*, J.S. *#1*; SHANON EDMISTON, THE ESTATE OF JOHN ROBERT SCHUBERT, JR., and JOHN ROBERT SCHUBERT, JR.'s *heirs-at-law*,

*Plaintiffs—Appellees*,

*versus*

OSCAR BORREGO, SR.; OSCAR E. CARRILLO; PETER E. MELENDEZ,

*Defendants—Appellants*.

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:21-CV-132

———————————————————

Before BARKSDALE, SOUTHWICK, and HIGGINSON, *Circuit Judges*.

RHESA HAWKINS BARKSDALE, *Circuit Judge*:

This opinion is rendered contemporaneously with the opinion for the appeal in 22-10360, *Crandel v. Hall*, consolidated on appeal with 22-10361, *Crandel v. Hastings*. The two opinions concern the suicides by two pretrial

No. 22-50102

detainees in two Texas jails and, *inter alia*, failure-to-protect claims. Moreover, the same counsel for plaintiffs appear in each appeal.

At hand is an interlocutory appeal contesting the denial of motions to dismiss asserting qualified immunity against failure-to-protect claims concerning the pretrial detainee. Primarily at issue is whether the complaint plausibly alleges the three appellants possessed subjective knowledge of a substantial risk of suicide by detainee John Robert Schubert, Jr. This action under 42 U.S.C. § 1983 arises out of his death while in pretrial detention in the Culberson County, Texas, Jail. Plaintiffs fail to plausibly allege appellants possessed the requisite subjective knowledge. VACATED and RENDERED.

I.

Plaintiffs assert claims in district court under § 1983 against Oscar Borrego, Sr., Sheriff Oscar E. Carrillo, Deputy Peter E. Melendez, Adelaida Zambra, and Ernesto Diaz for failing to protect Schubert, claiming violations of the Eighth and Fourteenth Amendments. They also have claims against individual defendants under a theory of bystander liability, and a claim against the Sheriff for supervisory liability. And, against Culberson County, plaintiffs assert a claim under § 1983 and *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978), on the basis that its policies related to jail-suicide prevention caused a violation of Schubert's constitutional rights. But, this interlocutory appeal concerns only the failure-to-protect claims against Borrego, Sheriff Carrillo, and Deputy Melendez (appellants).

A.

Because denial of a motion to dismiss is at issue, the following recitation of fact is, unless otherwise noted, based on plaintiffs' operative 75-page complaint. As done in the complaint, approximate times are used. And,

2

for the statements, including by appellants, obtained on 7 July 2019, and contained in the Texas Rangers' report, discussed *infra*, the district court relied on the statements in the report as included in the complaint; therefore, we do not distinguish between the report and the complaint.

On 6 July 2019, in Van Horn, Texas, Borrego, a jailer with the jail, received a series of calls concerning a male—later identified as Schubert—needing assistance. In the first call, at 11:05 p.m., the male caller asserted someone was trying to kill him. In the second call, at 11:09 p.m., an off-duty trooper stated a man was at his door saying someone was trying to kill him. And, in the third and final call, at 11:12 p.m., someone at the El Capitan Hotel in Van Horn said a man told the hotel clerk someone was trying to kill him. Schubert, who had been wandering around Van Horn, was both the initial unknown caller and the subject of the second and third calls.

Borrego directed Culberson County Sheriff's Deputy Melendez to respond. The Deputy was dispatched initially to a location in Van Horn regarding Schubert's knocking on a resident's door, but Schubert was not present when the Deputy arrived. After being notified of the third call, the Deputy located Schubert at 11:15 p.m. at the El Capitan Hotel.

The Deputy spoke with Schubert, later providing in a statement (included in the complaint) that Schubert "appeared nervous and said that people were trying to kill [him]". The Deputy said Schubert: accurately stated the day of the week, the approximate time, and his location in Van Horn; provided his name and date of birth; but gave an incorrect year.

The Deputy took Schubert to a Border Patrol Station to obtain information to identify him correctly. In doing so, the Deputy learned Schubert had an active warrant for parole violation.

No. 22-50102

Based on the warrant, the Deputy arrested Schubert and transported him to the jail.  They arrived at 12:14 a.m. on 7 July, and Schubert was placed in the booking area.

Culberson County Sheriff Carrillo heard Borrego's dispatch to Deputy Melendez and followed up to check on the situation involving Schubert.  After learning that the Deputy arrested Schubert, the Sheriff "decided to go to the jail and check on [Schubert] and jail personnel".  Arriving at the jail after 12:59 a.m., the Sheriff was advised Schubert had a warrant for parole violation.

With Borrego present, Schubert told the Sheriff:  "he had hitchhiked from El Paso and was in a half-way house in Horizon, Texas"; "he had left the Horizon facility without permission and was not allowed to stay at the facility once he returned"; and "they were mean to him at the facility, and . . . he had had enough".  Throughout the interview, Schubert was not wearing a shirt, because, as he explained, it was wet.

Schubert appeared to be cooperative and truthful in his responses.  Borrego and the Sheriff did not complete a "Screening Form for Suicide and Medical/Mental/Developmental Impairments", which plaintiffs allege is required by the Texas Commission on Jail Standards (TCJS).

After the Sheriff spoke with Schubert, Borrego, at 1:35 a.m., provided Schubert jail-issued clothing pursuant to the Sheriff's instruction.  Deputy Melendez and Borrego escorted Schubert to a cell at 1:42 a.m.  Schubert repeated to the Deputy that someone was trying to kill him.  Borrego, pursuant to the Sheriff's instruction, provided Schubert with a mattress.  He was not placed on suicide watch.

The Sheriff and Borrego left the jail at 1:48 a.m.  The Deputy went back on patrol at about the same time.

4

When Borrego went to the dispatch office at 1:48 a.m. to clock out, he asked Zambra, another jail employee, to run a driver's-license and criminal-history check on Schubert. (Zambra, a defendant in this action, is not a party to this interlocutory appeal on qualified immunity. The district court granted her motion to dismiss, based on such immunity.)

Zambra printed a copy of Schubert's driver's license and criminal history at 2:17 a.m.; and, at 2:28 a.m., she requested a medical-history report: a "Continuity of Care Query" (CCQ). It was later noted by the TCJS, in its 8 August 2019 report (a copy of the report summary is included in the body of the complaint), that the CCQ came back as "no match".

At 2:42 a.m., Zambra "manually" checked on the jail's detainees. When she checked Schubert's cell, she could see him "half-kneeling with a white sheet mangled on his neck and tied to a top grey shelf". She went to the "catwalk hallway" to get a better view of Schubert and called out to him through the jail bars, but he did not respond. Next, she "called Deputy Melendez and Sheriff Carrillo [at 2:44 a.m.] and asked that they come to the jail as soon as possible".

The Sheriff, after hearing Zambra's radio call at 2:47 a.m., arrived first and removed the sheet from Schubert's neck, laid him on a bunk, and began CPR. Upon the Sheriff's instruction, Zambra called the rescue team at 2:50 a.m. EMTs were dispatched at 2:56 a.m., and arrived at the jail at 2:59 a.m. Upon their arrival, Schubert was not breathing and did not have a pulse. He was pronounced dead, with his autopsy report listing his cause of death as suicide through asphyxia due to hanging.

B.

This action was filed in June 2021. Although additional claims were added, at issue in this interlocutory appeal, as discussed *supra*, are only plaintiffs' claims under § 1983 against Borrego, Sheriff Carrillo, and Deputy

No. 22-50102

Melendez for failure to protect, in violation of the Eighth and Fourteenth Amendments. All individual defendants filed motions to dismiss, asserting qualified immunity.

The district court in January 2022 denied in part appellants' motions, concluding they were not entitled to qualified immunity against the failure-to-protect claims. In doing so, the court concluded the complaint plausibly alleged: each of the appellants possessed the requisite subjective knowledge of a risk of suicide or serious harm; and, they failed to take action to abate that risk. The court concluded the "risk was obvious", based on: Schubert's fragile psychological state; his statements regarding an unidentified assailant; and appellants' knowledge about the risk of jail suicides. The court further concluded it is clearly established that, when an official is subjectively aware of the risk of suicide and responds by giving the detainee loose bedding, an obvious ligature, he acts with deliberate indifference and is not entitled to qualified immunity.

Regarding plaintiffs' other claims, the district court, *inter alia*, dismissed the bystander-liability claims against the three appellants and the supervisory-liability claim against the Sheriff.

## II.

This interlocutory appeal by Borrego, the Sheriff, and the Deputy (again, appellants) followed. Such an appeal from the denial of qualified immunity is permitted pursuant to the collateral-order doctrine. *E.g.*, *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Along that line, our court has jurisdiction to "review a district court's order denying a motion to dismiss on the basis of qualified immunity only to the extent that the appeal concerns the purely legal question of whether the defendants are entitled to qualified immunity on the facts". *Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022) (alteration omitted) (citation omitted).

6

"On interlocutory appeal, we review [*de novo* the] denial of a qualified-immunity-based motion to dismiss . . . ." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). At this stage, we must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor". *Id.* "We do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (alteration omitted) (citation omitted).

"A plaintiff seeking to overcome a motion to dismiss because of qualified immunity . . . must plead facts that allow the court to draw the reasonable inference that the defendant is liable for the harm alleged." *Bevill*, 26 F.4th at 274 (citation omitted). That is, "a plaintiff must plead factual allegations that, if true, 'raise the right to relief above the speculative level'", meaning that the relief is "plausible, not merely possible". *Benfield*, 945 F.3d at 337 (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); then citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiffs, in response to questioning at oral argument, submitted a Federal Rule of Appellate Procedure 28(j) letter maintaining that, under *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010), we may consider documents attached to a dismissal motion that "are referred to in the plaintiff's complaint and are central to the plaintiff's claim". This is an exception to the general rule that, in reviewing a motion to dismiss, the court may not go outside the complaint and any attachments to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12 (b)(6)). *Sullivan* relies on our decision in *Scanlan v. Texas A&M University*, 343 F.3d 533 (5th Cir. 2003). *Scanlan* in turn relied on *Collins*, which promulgated this "limited exception" for when our court may go outside the complaint, including attachments to it, in reviewing a motion to dismiss. *Scanlan*, 343 F.3d at 536; *see Collins*, 224 F.3d 496.

We need not consider this narrow exception's application *vel non*, however, because, as noted *supra* and explained below, the district court relied on the statements as included *in* the complaint. In denying dismissal, the court stated: "All facts are taken as true from the allegations in Plaintiffs' Complaint. . . . Defendants Borrego, Zambra, Melendez, Diaz, and Carrillo attached their sworn statements to their respective Motions. . . . These statements are *effectively identical* to those alleged in the Complaint upon which the Court relies." (Emphasis added.) *Cf. Scanlan*, 343 F.3d at 536 (citing *Collins*, 224 F.3d at 496) (explaining that, in *Collins*, our court "approved *the district court's consideration of documents* attached to the motion to dismiss" and "that the plaintiffs did not object to, or appeal, the district court's consideration of those documents was central to this Court's approval of that practice" (emphasis added)).

"Qualified immunity protects officers from suit unless their conduct violates a clearly established [statutory or] constitutional right." *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). In our court, plaintiffs assert, solely for the purpose of preserving the issue for further review, that qualified immunity should be "abolished or modified so that it is inapplicable here". For this appeal, we proceed with the qualified-immunity doctrine intact.

When, as in this instance, defendants assert qualified immunity as a basis for dismissing a complaint, "plaintiff seeking to overcome qualified immunity must [plead facts allowing us to draw a reasonable inference]: '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct'". *Id.* (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)); *Bevill*, 26 F.4th at 274. We have discretion to elect which of the two prongs for this analysis should be addressed first. *E.g.*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For this first prong, in order "[t]o overcome [appellants'] qualified immunity defense, [p]laintiffs must first demonstrate that each official violated [Schubert]'s statutory or constitutional right". *Converse*, 961 F.3d at 775. "[T]he Fourteenth Amendment protects pretrial detainees' right to medical care and to 'protection from *known* suicidal tendencies'". *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (emphasis added) (quoting *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019)); *see also Converse*, 961 F.3d at 775 ("We have repeatedly held that pretrial detainees have a Fourteenth Amendment right to be protected from a *known* risk of suicide." (emphasis added)).

Where the claimed violation of that Fourteenth Amendment right turns on alleged acts or omissions of an official, as in this action, the question is whether the "official breached his constitutional duty to tend to the basic human needs of persons in his charge". *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc) (explaining difference in episodic and conditions-of-confinement claims); *see also Cope v. Cogdill*, 3 F.4th 198, 206–07 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2573 (2022). Officials breach their constitutional duty, violating a detainee's rights, when "they had gained *actual knowledge* of the substantial risk of suicide and responded with deliberate indifference". *Converse*, 961 F.3d at 775 (emphasis added) (quoting *Hare*, 74 F.3d at 650). It is undisputed that "[d]eliberate indifference is an extremely high standard to meet". *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

Accordingly, an "official will not be held liable if he merely 'should have known' of a risk". *Converse*, 961 F.3d at 775. Rather, to satisfy this high standard, plaintiff must plausibly allege both that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that he "also [drew] the inference". *Id.* at 775–76 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). An official with

such knowledge "shows a deliberate indifference to that risk 'by failing to take reasonable measures to abate it'". *Id.* (quoting *Hare*, 74 F.3d at 648).

Plaintiffs, however, maintain this court should instead apply the objective-unreasonableness standard the Court adopted in *Kingsley v. Hendrickson* for *claims of excessive force* (*not failure to protect*) by officers against a pretrial detainee. 576 U.S. 389 (2015). But, we are bound by our rule of orderliness. *E.g.*, *Def. Distrib. v. Platkin*, 55 F.4th 486, 495 n.10 (5th Cir. 2022) ("The rule of orderliness means that one panel of our court may not overturn another panel's decision, absent an intervening change in law, such as by statutory amendment, or the Supreme Court, or our *en banc* court." (citation omitted)). This rule renders this objective-unreasonableness assertion meritless. *See Cope*, 3 F.4th at 207 n.7 (explaining *Kingsley* "did not abrogate [this court's] deliberate-indifference precedent"); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017) ("Because the Fifth Circuit has continued to rely on *Hare* and to apply a subjective standard post-*Kingsley*, this panel is bound by our rule of orderliness.").

Regarding the second prong of the qualified-immunity analysis, for a right to be "clearly established" it must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right". *Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 306 (5th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Critically, courts "must not 'define clearly established law at a high level of generality'"; rather, we must undertake the inquiry "in light of the specific context of the case". *Cope*, 3 F.4th at 204 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Pursuant to our above-discussed discretion to begin our two-prong qualified-immunity analysis with either prong, we elect to begin with the first. For the reasons that follow, plaintiffs fail to plausibly allege a violation of a

statutory or constitutional right. Therefore, we do not reach the second prong (whether clearly-established).

To overcome appellants' motions to dismiss based on qualified immunity, plaintiffs must, as stated *supra*, have pled facts permitting our court to draw a reasonable inference that Borrego, Sheriff Carrillo, and Deputy Melendez "(1) had subjective knowledge of a substantial risk of serious harm and (2) responded to that risk with deliberate indifference". *Id.* at 210 (citation omitted). In the context of detainee suicide, the requisite substantial risk of serious harm must be specific; plaintiffs must allege defendants "were aware of a substantial and significant risk that the detainee might kill himself". *Id.* at 207 (alteration omitted) (citation omitted).

For the reasons that follow, plaintiffs fail to plausibly allege appellants had the requisite subjective knowledge of a substantial risk of suicide. Accordingly, whether they responded to that putative risk with deliberate indifference does not come into play.

A.

We first address plaintiffs' blanket allegation that appellants "were aware of the excessive risk of [Schubert's] health and safety and were aware of facts from which an inference could be drawn of serious harm, suffering and death. Moreover, they in fact drew that inference". As stated *supra*, we must carefully discern factual allegations from legal conclusions in plaintiffs' complaint. This statement about appellants' state-of-mind merely restates the standard required to demonstrate the requisite subjective knowledge; therefore, we do not accept it as a well-pleaded allegation when evaluating the sufficiency of the complaint. *See Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014) (observing allegation that defendants "exhibited deliberate indifference" was "merely a legal conclusion", even if it "might have 'been couched as a factual allegation'" (quoting *Iqbal*, 556 U.S. at 678)).

Regarding plaintiffs' well-pleaded allegations concerning the lack of mental-health screening, plaintiffs allege appellants ignored TCJS' instructions and put Schubert at risk. These allegations fail. Our court has acknowledged there is no independent constitutional right to suicide screening. *E.g.*, *Est. of Bonilla*, 982 F.3d at 307 (citing *Taylor v. Barkes*, 575 U.S. 822, 826 (2015)) ("No decision of this Court establishes a right to proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols.").

The well-pleaded allegations do not give rise to a plausible inference that Schubert had previously experienced suicidal tendencies, nor that he acted in a way to alert officials of a substantial risk of suicide. Further, plaintiffs do not allege he had documented instances of mental illness, as the earlier-discussed CCQ came back as "no match". (Therefore, even if plaintiffs could assert a right to suicide screening, allegations "of inadequate screening or a violation of facility procedure would not raise an issue of deliberate indifference" without additional allegations plausibly demonstrating appellants subjectively knew Schubert was at risk for suicide. *Id.* at 305.)

Additionally, plaintiffs allege the following. Culberson County had been previously cited by the TCJS for violating jail standards relating to the completion of the screening form and prevention of jail suicides. The TCJS had also cited the county's jail for being non-compliant with various requirements, including requirements to ensure that all jailers were up-to-date on their licensing, that only jailers with the proper training perform inmate-classification duties, that jailers make sure to log that they have searched for whether the inmate has previously received mental-health treatment, and that jailers attend the required suicide-prevention training. Plaintiffs further allege a prior suicide at the jail put appellants "on notice".

In response to Schubert's death, the TCJS, in its above-referenced 8 August 2019 report, stated the jail:  exhibited two violations of minimum standards; and was issued a notice of non-compliance.

### B.

With these general allegations considered, we turn to specific allegations regarding appellants' entitlement *vel non* to qualified immunity. When, as here, multiple government actors are defendants and assert qualified immunity, we "evaluate each officer's actions separately, to the extent possible".  *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

Again, because motions to dismiss are under review, we must consider the well-pleaded allegations in the complaint.  For the reasons that follow, we hold plaintiffs "have failed to [allege] that [Schubert's] tendencies were known to anyone—let alone [appellants]".  *Est. of Bonilla*, 982 F.3d at 305.

### 1.

Borrego, a jailer for the Culberson County Jail, received the three 911 calls, one in which a male (later identified as Schubert) stated an unknown person was trying to kill him and two in which others reported a man was going around saying that someone was trying to kill him.  Borrego also, with Sheriff Carrillo, witnessed Schubert's explaining his history of drug abuse and his leaving a halfway house.  Borrego did not complete a mental-health screening form for Schubert.

Plaintiffs also allege Borrego "formed the opinion . . . that [Schubert] was mentally ill and needed immediate mental health treatment" and that "[Schubert] did not need to be jailed".  We do not accept this "conclusory statement", however, because it amounts to a "naked assertion[] devoid of

further factual enhancement". *Benfield*, 945 F.3d at 336–37 (citation omitted).

Accepting the well-pleaded allegations as true and drawing reasonable inferences in plaintiffs' favor, we consider whether Borrego "had the requisite knowledge of a substantial risk". *Farmer*, 511 U.S. at 842; *Benfield*, 945 F.3d at 336. Our court has repeatedly held officials have the requisite subjective knowledge when circumstantial evidence directs an official to the specific risk of suicide. *E.g.*, *Cope*, 3 F.4th at 207–08 (official witnessed decedent attempt suicide the day before incident in question); *Converse*, 961 F.3d at 776, 778–79 (official was present when decedent was pulled off bridge while he attempted to jump and where official heard decedent express that he should have jumped and would make another attempt to do so when released); *Hyatt v. Thomas*, 843 F.3d 172, 178 (5th Cir. 2016) (even though decedent stated he did not want to kill himself, official knew decedent suffered from depression, had recently attempted suicide, and his wife believed him to be suicidal).

Plaintiffs do not plausibly allege Schubert did or said anything to indicate he was suicidal or otherwise intended to harm himself. The allegations that Schubert told Borrego he had recently left a half-way house and may have abused drugs did not automatically impute knowledge to Borrego of a substantial risk of suicide. *E.g.*, *Est. of Bonilla*, 982 F.3d at 305 ("[T]he fact of [the decedent's] intoxication would not indicate that [the defendant] inferred [he] was a suicide risk".). Additionally, the allegations do not plausibly show that Schubert's prior or active drug use demonstrated to Borrego that Schubert faced a substantial risk of suicide. *E.g.*, *id.*

Because plaintiffs fail to allege sufficient facts to plausibly show Borrego was subjectively aware of the risk of suicide, their allegations do not

state a failure-to-protect claim against him. *Cf. Converse*, 961 F.3d at 778–80. Accordingly, Borrego is entitled to qualified immunity against the claim.

2.

Sheriff Carrillo was monitoring the radio when he heard the dispatch to Deputy Melendez. The Sheriff learned Schubert had been taken into custody after three 911 calls, one in which Schubert (again, unidentified at the time) called to say that an unknown person was trying to kill him and two others called to report that a man (Schubert) was going around saying that someone was trying to kill him. After Schubert was transported, the Sheriff "decided to go to the jail and check on [Schubert] and jail personnel".

Plaintiffs allege that, while interviewing Schubert, the Sheriff, as did Borrego, learned Schubert had a history of drug abuse and had recently left a halfway house. Although plaintiffs allege Schubert was cooperative and appeared truthful in his responses, plaintiffs also allege: the Sheriff was still required to conduct a mental-health screening form in accordance with TCJS; and, because "the form had not been completed", the Sheriff "had to operate on the belief that [Schubert] was suicidal" and "was required to put [Schubert] on suicide watch".

Our court requires, as stated *supra*, defendant have "actual knowledge of the substantial risk of suicide". *Id.* at 775. Plaintiffs fail to allege Schubert did or said anything to indicate he was suicidal.

Because plaintiffs fail to allege sufficient facts to plausibly show the Sheriff was subjectively aware of the risk of suicide, their allegations do not state a failure-to-protect claim against him. *Cf. id.* at 778–80. Accordingly, Sheriff Carrillo is entitled to qualified immunity against the claim.

3.

The following allegations concern the third and final appellant, Deputy Melendez. He was dispatched to respond to the 911 calls in which Schubert was the subject. Borrego directed the Deputy to a location in Van Horn regarding an individual—unknown at the time—stating someone was trying to kill him. Upon the Deputy's locating Schubert at the El Capitan Hotel at 11:13 p.m., he spoke with Schubert and described him as appearing nervous. Schubert also reiterated that "there was someone trying to kill him". Schubert was oriented regarding time and place. He also "provided his correct name and a date of birth which was correct other than . . . off by two years".

The Deputy took Schubert to a Border Patrol station in order to identify him. After further investigation, the Deputy was able to identify Schubert and learned he "allegedly had an active warrant for an alleged parole violation". Pursuant to the warrant, the Deputy took Schubert to the jail.

The Deputy was dispatched to another call shortly after arriving at the jail with Schubert, but he later returned and assisted Borrego in escorting Schubert to his cell. During this time, Schubert repeated that someone was trying to kill him, but did not provide a name or description.

Plaintiffs allege the Deputy "was well aware that [Schubert] was not in his right mind. He knew that [Schubert] was mentally ill. He likewise formed the belief that [Schubert] was a danger to himself and/or others". Again, these are "naked assertions devoid of further factual enhancement", and they do not plausibly allege the requisite subjective knowledge. *Benfield*, 945 F.3d at 336–37 (citation omitted).

The key distinction between the Deputy and the other two appellants is plaintiffs' assertion that the Deputy erred in his means and method of

taking Schubert into custody. Texas Health and Safety Code Chapter 573 permits officers to take an individual into custody without a warrant if, *inter alia*, they "ha[ve] reason to believe and do[] believe that the person is a person with mental illness; and because of that mental illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained". TEX. HEALTH & SAFETY CODE § 573.001(a)(1). Plaintiffs concede that a violation of Chapter 573 is not *per se* a constitutional violation; accordingly, they offer any alleged violation as evidence that a constitutional violation occurred.

In this court, plaintiffs maintain they alleged Schubert was taken into custody pursuant to this provision. Plaintiffs' assertion stretches the bounds of the complaint.

The complaint does not allege Schubert was taken into custody under this statute; rather, it alleges the Deputy "*should have* transported [Schubert] to the nearest-inpatient mental health facility" pursuant to Chapter 573. (Emphasis added.) Additionally, to the extent plaintiffs allege the Deputy was required to take Schubert into custody under Chapter 573, that chapter is permissive, not mandatory. *See* § 573.001(a) ("A peace officer, without a warrant, *may* take a person into custody . . . ." (emphasis added)). Accordingly, this allegation is without merit.

We next consider whether the allegations about the facts known to the Deputy at the time plausibly provided the requisite subjective knowledge of a substantial risk of suicide. In addition to his initial knowledge from the dispatch, Schubert, while escorted to his cell, reiterated to the Deputy that someone was trying to kill him. Again, plaintiffs' assertions do not plausibly allege the Deputy had actual knowledge that Schubert posed a substantial risk of suicide. *E.g.*, *Converse*, 961 F.3d at 775.

No. 22-50102

Because plaintiffs fail to allege sufficient facts to plausibly show the Deputy was subjectively aware of the risk of suicide, their allegations do not state a failure-to-protect claim against him. *Cf. id.* at 778–80. Accordingly, Deputy Melendez is entitled to qualified immunity against the claim.

## III.

For the foregoing reasons, the district court's denying Borrego, Sheriff Carrillo, and Deputy Melendez' motions to dismiss the failure-to-protect claims is VACATED and judgment is RENDERED for them.