# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 28, 2025

Lyle W. Cayce
Clerk

No. 24-40209

Ignacia Carmona, *Individually, and as the Independent Administrator (pending court approval) for the Estate of Veronica Peranez Carmona, and as the Next Friend for G.H., V.A.H., R.P., E.P., R.C.P., J.D.P., AND C.I.P.*,

*Plaintiff—Appellant*,

*versus*

The City of Brownsville; Jesus Olvera, *In his Individual and Official Capacity*; Pedro Dominguez, *In his Individual and Official Capacity*; John Does 1-15,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:23-CV-84

_____

Before Jones, Barksdale, and Ho, *Circuit Judges*.

Rhesa Hawkins Barksdale, *Circuit Judge*:

In appealing from a final judgment, Ignacia Carmona (Plaintiff) contests only the district court's granting Officers Jesus Olvera and Pedro Dominguez' (Officers) qualified-immunity-based motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (failure to state claim). At issue is whether the operative (first-amended) complaint, under 42 U.S.C. § 1983, plausibly alleges Officers possessed subjective knowledge of a

substantial risk of serious harm to pretrial detainee Veronica Carmona (Carmona). This deliberate-indifference claim arises out of her death while in pretrial detention in the Brownsville, Texas, city jail. Plaintiff fails to plausibly allege Officers possessed the requisite subjective knowledge. AFFIRMED.

I.

In this appeal, Plaintiff claims Officers failed to provide medical care to Carmona, in violation of her Fourteenth Amendment right to such care. In her operative complaint, Plaintiff also asserted Fourteenth Amendment claims against Brownsville and John Doe Defendants 1–15, but those claims were dismissed; and, as noted, Plaintiff does not contest their dismissal.

Accordingly, this appeal from a final judgment concerns only Officers' being granted qualified immunity against the deliberate-indifference claims. Because they were dismissed at the motion-to-dismiss stage, the following is based on the allegations in Plaintiff's operative complaint.

During the early evening hours of 17 June 2021, Carmona was driving a white Chevrolet Suburban in Brownsville, possibly under the influence of alcohol and cocaine. She crashed into a traffic sign, drove into a parking lot, and crashed into a parked vehicle. She exited the parking lot and crashed into another vehicle stopped at a traffic light. Finally, she drove on the expressway, exited it, and crashed into a brick apartment building. The collision into the building was "severe" and caused the Suburban's airbags to deploy. Throughout the course of Carmona's dangerous driving, the Brownsville Police Department received multiple emergency calls about a white Chevrolet Suburban being driven erratically.

Officers arrived at the scene approximately two minutes after Carmona crashed into the building. Officers were aware of the emergency calls concerning her other crashes and observed that the airbags had

deployed.  She had several visible injuries, including abrasions on her right arm, a contusion on her right hand, abrasions on her right thigh, a laceration on her right heel, a contusion on her left thigh, and an abrasion on her left foot.

Officers did not seek any medical care for Carmona, even though she had been involved in four vehicular accidents within a single night, including colliding with the brick building.  Instead of transporting her to a hospital or calling for emergency medical services (EMS) to examine her, Officers took her to the Brownsville jail. On the way there in Officer Olvera's police cruiser, Carmona twice intentionally banged her head against the partition panel, exhibiting "bizarre" behavior.

Upon arriving at the jail, Carmona still did not receive any medical attention or screening.  Almost four hours after being booked, she was found unresponsive in her cell and declared dead shortly thereafter.  She died from internal bleeding caused by lacerations to her liver as a result of the multiple vehicular accidents.

This action was filed on 6 June 2023, just shy of two years after Carmona's death, against Officers, Brownsville, and John Doe Defendants 1–15, claiming civil-rights violations under the Fourteenth Amendment and state-law tort violations.  The amended complaint did not include the latter claims.  Because only the claims under § 1983 against Officers, for which they were granted qualified immunity, are at-issue in this appeal, only the procedural history relevant to Officers is discussed below.

Officers moved to dismiss, asserting qualified immunity, and requested a stay of discovery.  The magistrate judge granted the stay, pending resolution of Officers' qualified-immunity defense, and granted Plaintiff leave to amend her complaint in the light of Officers' Rule 12(b)(6) motion. The first-amended complaint was filed shortly thereafter.

The magistrate judge recommended the district court grant Officers' motion to dismiss, which it did in a comprehensive opinion. The court concluded Officers were entitled to qualified immunity because the complaint did not plausibly allege they possessed the requisite subjective knowledge that Carmona was suffering from internal injuries. In support, the court concluded "that when [an injured person's] injuries are not visually apparent and [that] person's complaints are non-existent or do not reveal the full extent of the injuries, then the responding official's inaction does not amount to deliberate indifference". The court further concluded that the law was not clearly established such that it would require an officer to seek medical care for an individual involved in a vehicle accident when the alleged facts did not permit the inference that the officer had subjective awareness of internal injuries. The 4 March 2024 final judgment dismissed all claims in the operative complaint.

## II.

As noted, Plaintiff challenges only the Officers' Rule 12(b)(6) motion-to-dismiss being granted, based on the district court's concluding they were entitled to qualified immunity. A district court's decision on a Rule 12(b)(6) motion is reviewed *de novo*, "accept[ing] all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor". *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023) (citation omitted). "We do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* (citing *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019)).

In reviewing a ruling on a Rule 12(b)(6) motion, our court considers only "the facts stated in the complaint and the documents either attached to or incorporated in the complaint". *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (citation omitted). Dismissal is

proper where plaintiff fails to "plead sufficient facts to state a claim for relief that is plausible on its face". *Id.* Facial plausibility means the pleaded "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Qualified immunity protects officers from suit unless their conduct violates a clearly established [statutory or] constitutional right." *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). Consistent with the motion-to-dismiss standard, our court reviews *de novo* the grant of a qualified-immunity-based motion to dismiss. *E.g.*, *Edmiston*, 75 F.4th at 557. "Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate the defense once properly raised." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (citation omitted). Plaintiff bears the burden to "plead facts which, if proved, would defeat the claim of immunity". *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted).

As noted, "a plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct". *Converse*, 961 F.3d at 774 (5th Cir. 2020) (citation omitted). Therefore, to succeed in opposition to qualified immunity asserted in a Rule 12(b)(6) motion to dismiss, even where plaintiff adequately pleads the violation of a federal right (statutory or constitutional) (first prong), plaintiff still must adequately plead that "defendant's conduct was objectively [un]reasonable in light of clearly established law" (second prong). *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001).

We have discretion as to which of the two prongs should be analyzed first; but, "often the better approach to resolving cases in which the defense

of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a [federal] right at all". *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citation omitted). For the reasons that follow, Plaintiff fails to plausibly allege violation of the claimed constitutional right. Therefore, we do not reach the second prong (whether right clearly-established).

## A.

Where the claimed constitutional violation involves the Fourteenth Amendment right to medical care, Plaintiff must allege facts, which, if proved, would show Officers exhibited deliberate indifference to Carmona's serious medical needs. *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022); *see also Hare v. City of Corinth*, 74 F.3d 633, 636 (5th Cir. 1996) (en banc). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). To show deliberate indifference, Plaintiff must plausibly allege that Officers "(1) w[ere] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) actually drew the inference". *Sims*, 35 F.4th at 949–50 (citation omitted). (Although some of our court's prior opinions "posited a third element—that the official subjectively intended that harm occur"—our court has since held we "cannot endorse this [third-element requirement] because it departs from controlling Supreme Court and Fifth Circuit law". *Dyer v. Hous.*, 964 F.3d 374, 380 (5th Cir. 2020) (en banc) (citation omitted).)

Serious harm, in this context, is not "just any harm"; rather, the medical need must be "so apparent that even laymen would recognize that care is required". *Rogers v. Jarrett*, 63 F.4th 971, 976 (5th Cir.), *cert. denied*, 144 S. Ct. 193 (2023). In other words, Officers must have been subjectively aware of the "severity of [Carmona's] condition". *Id.* Alleging only that

defendant was aware that a *potential* for serious harm existed is not sufficient. *Id.* at 976–77.

In that regard, mere negligence does not rise to the level of deliberate indifference. *Dyer*, 964 F.3d at 381 ("[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm".). The Supreme Court has clearly articulated that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation", does not amount to the requisite subjective knowledge of a substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). In other words, "[l]iability attaches only if officials actually knew—not merely should have known—about the risk". *Rogers*, 63 F.4th at 977.

## B.

We first address Plaintiff's blanket allegation that Officers "drew the inference that [Carmona] faced a substantial risk of harm or death from the auto collision(s) she was involved in" and acted with deliberate indifference by failing to seek medical care. This statement "merely restates the standard required to demonstrate the requisite subjective knowledge". *Edmiston*, 75 F.4th at 560. "[W]e must carefully discern factual allegations from legal conclusions in plaintiffs' complaint", omitting the latter from our evaluation of the sufficiency of the complaint. *Id.* (citing *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014) (alleging defendants "exhibited deliberate indifference" was "merely a legal conclusion", even if it "might have been couched as a factual allegation") (citation omitted)).

Relatedly, Plaintiff makes numerous allegations which we cannot accept in our evaluation of the complaint, as they "stop[] short of the line between possibility and plausibility". *Iqbal*, 556 U.S. at 678 (citation omitted). For example, Plaintiff alleges that "it would have been apparent to

[Officers] that [Carmona] was in tremendous pain". This "awareness" of Carmona's pain, however, is not based on anything she said or did (such as clutching her abdomen or telling Officers she was in "tremendous pain"); rather, these allegations impute such awareness to them, based on Carmona's physical condition and the general proposition that "liver lacerations can cause extreme pain".

Additionally, Plaintiff alleges that Officers: "*likely attended* police academy training", during which, "they *likely learned* that they—when responding to car crashes—have a responsibility to act in good faith to provide emergency medical services to those occupants of vehicles involved in car crashes"; "*very likely learned* that they should have conducted a head-to-toe assessment [of Carmona]"; and "*very likely learned* to recognize appropriate first aid measures for internal bleeding—including calling EMS or taking victims to a hospital where needed". (Emphasis added.) These allegations, however, are purely conjectural and amount to nothing more than conclusory statements masquerading as factual allegations. Accordingly, these are not well-pleaded allegations and are omitted from our evaluation of the sufficiency of the complaint under the Rule 12(b)(6) standard. *See Edmiston*, 75 F.4th at 561.

Turning to the facts that are well-pleaded, and viewing them in the requisite light most favorable to Plaintiff, Officers: arrived at the scene of the final accident knowing Carmona had been in several automobile collisions earlier in the day; observed she had crashed her automobile into a brick apartment building with enough force to deploy the Suburban's airbags; observed she had visible physical injuries, including contusions, abrasions, and lacerations; and, despite these observations, did not call EMS, take her to a hospital, or seek any other medical attention on her behalf.

Presumably, Officer Dominguez' involvement ended at the scene of the accident, as the complaint references only Officer Olvera regarding traveling from the final accident site to the jail. Consequently, the allegation that Carmona "exhibited bizarre behavior" while traveling to the jail by "banging her head" against the partition panel in Olvera's police cruiser is only relevant to his subjective state-of-mind.

The thrust of Plaintiff's allegations is that the risk of internal injuries from an automobile accident is so obvious that even a layperson would have thought it wise to have Carmona examined. (The complaint includes a section entitled "Even a Layman is Aware of the Risk of Internal Bleeding from a Car Crash".) The district court noted correctly, however, that the relevant question was not whether automobile accidents *can* cause massive internal bleeding, but whether there were plausible allegations that Officers were *subjectively aware* of facts which demonstrated Carmona was suffering from internal injuries. In determining Officers were entitled to qualified immunity, the court concluded correctly that the complaint did not plausibly allege that the need for care for internal injuries was so obvious that Officers could be found to have the requisite subjective awareness of the need.

In pushing back against this conclusion, Plaintiff relies heavily on *Nerren v. Livingston Police Dep't*, 86 F.3d 469 (5th Cir. 1996), to support her allegation that Officers exhibited deliberate indifference. In *Nerren*, our court affirmed the denial of qualified immunity—but *at the summary-judgment, not motion-to-dismiss, stage*—by ruling that a reasonable juror could find the arresting officers were deliberately indifferent to Nerren's constitutional right to medical care. *Id.* at 473.

Along that line, Nerren was involved in an automobile accident and fled the scene. *Id.* at 470. When officers later arrested him, he stated he was in pain and requested medical care. *Id.* Instead of providing it, one of the

arresting officers expressly denied it, stating that he was doing so because Nerren fled the scene of the accident. *Id.* at 470–71. He was taken to jail without receiving medical care. *Id.* at 471. When released the following day, he went to the hospital, where a laparoscopic examination revealed a large amount of internal bleeding. *Id.* Similar to the instant action, Nerren's internal bleeding was caused by a torn liver. *Id.*

Akin to the *summary-judgment record* in *Nerren*, Plaintiff alleged that Carmona had abrasions as a result of the accident, she was in pain, and the arresting officers were aware she had been involved in an automobile collision. *See id.* Plaintiff's claim fails, however, because of one key factual distinction. In *Nerren*, the summary-judgment record showed the arresting officers were *subjectively aware* Nerren was in pain and wanted medical care because he explicitly stated as much. *Id.* at 470. In contrast, Plaintiff did not allege Carmona requested medical care. To the extent Plaintiff pleaded Officers were aware she was in "tremendous pain", and for the reasons discussed above, we do not accept the allegation as it is not well-pleaded.

Arguably, had Plaintiff alleged Carmona complained of abdominal pain or clutched her abdomen, such conduct would have allowed an inference that Officers were aware she was suffering from internal injuries. *Cf. Sims*, 35 F.4th at 948 (officers not entitled to qualified immunity where detainee overdosed on narcotics and called out for help "at least 62 times"). But generally alleging that the risk of internal injuries from an automobile accident is so obvious that even a layperson is aware of such risk does not permit an inference of Officers' subjective awareness that Carmona was suffering from internal bleeding, resulting from a lacerated liver. Our court has consistently held that, when an arrestee suffers from non-visible injuries and the complaints are non-existent or do not reveal the full extent of the injuries, the responding official's inaction does not constitute deliberate indifference. *Compare Rogers*, 63 F.4th at 976 (head injury sustained after a

ceiling collapse insufficient to show subjective awareness of risk where detainee had no visible injuries) *with Dyer*, 964 F.3d at 381–82 (a reasonable trier of fact could conclude that officers who observed arrestee "str[ike] his head violently against the interior of [the] patrol car over 40 times", causing a visible head injury, were subjectively aware of risk of severe head trauma).

In a belated attempt to salvage her inadequate allegations, Plaintiff states that, unlike the plaintiff in *Nerren*, who survived being denied medical care, "[Carmona] is dead. And the district court stayed discovery . . . before Plaintiffs could attempt to learn what [Carmona] might have told the officers—or what they may have told her". But Plaintiff does not challenge on appeal the order staying discovery, including not contending the extenuating circumstances making it difficult, if not impossible, to ascertain what conversations did or did not take place between Carmona and Officers, merit an exception to the rule "that a plaintiff asserting constitutional claims against an officer claiming [qualified immunity] must survive the motion to dismiss without *any* discovery". *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 73 (2023) (emphasis in original).

In any event, the circumstances do not change Plaintiff's burden. Plaintiff was required to plead facts which, if proved, showed Officers were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists",—the serious harm being internal bleeding in this instance—"and actually drew the inference". *Rogers*, 63 F.4th at 976.

Viewing the well-pleaded facts in the light most favorable to Plaintiff—*i.e.*, Officers were aware Carmona was involved in multiple automobile collisions, and she had visible abrasions and contusions on her extremities—Plaintiff, at most, alleged that Officers *should have known* Carmona was at-risk for internal bleeding. But, as discussed *supra*, actual knowledge is required for liability to attach. *Id.* at 977.

No. 24-40209

Because Plaintiff fails to allege sufficient facts to plausibly show Officers were subjectively aware of the risk of internal bleeding, her allegations do not state a deliberate-indifference claim. And, as noted, because Plaintiff fails to allege violation of a constitutional right, we do not reach the second prong of the qualified-immunity test—whether that right was clearly established at the time of the violation.

## III.

For the foregoing reasons, the qualified-immunity-based dismissal of the deliberate-indifference claims against Officers was proper; the judgment is AFFIRMED.

JAMES C. HO, *Circuit Judge*, concurring in the judgment:

I agree that Plaintiff has failed to adequately allege Defendants' actual knowledge of the risk of serious medical harm presented in this case. I write separately to note that, under our circuit precedent, actual knowledge is not the only way that Plaintiff could have survived dismissal. "[O]ur court has emphasized that an 'official's knowledge of a substantial risk of harm may be inferred if the risk was obvious.'" *Kelson v. Clark*, 1 F.4th 411, 419 (5th Cir. 2021) (quoting *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). But Plaintiff fails to make this argument, so I express no view on it.