# United States Court of Appeals
# for the Fifth Circuit

---

No. 25-30399

---

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2026

Lyle W. Cayce
Clerk

Karl Von Derhaar,

*Plaintiff—Appellee*,

*versus*

Darryl Watson, *in both his individual and official capacity*,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1653

---

Before Smith, Willett, and Ramirez, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

New Orleans Police Department ("NOPD") officers visited the home of Karl Von Derhaar, a civilian employee of the NOPD. Fearing for Von Derhaar's safety, officers requested Von Derhaar accompany them to the Public Integrity Bureau ("PIB") to take a drug test. When Von Derhaar asked to go back into his home, officers called Lt. Darryl Watson, a supervisor in the PIB. Watson commanded the officers to "tell [Von Derhaar] he's being put back on the clock, he's being ordered to come into work to take this test." Von Derhaar went to the PIB with the officers but ultimately resigned instead of taking the drug test.

No. 25-30399

Von Derhaar sued Watson, among others, under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights. Because Watson's commands constitute a clearly established Fourth Amendment violation, we affirm the district court's denial of qualified immunity ("QI").

## I.

Von Derhaar worked as a civilian employee in the NOPD's crime lab. Von Derhaar requested leave without pay when his concerns over certain NOPD practices went unanswered. Officers subsequently went to Von Derhaar's home to conduct a wellness check.

Officers informed Von Derhaar that they were concerned about his well-being and asked him to accompany them to the PIB to take a drug test. Officers stated numerous times that he was not under arrest. When Von Derhaar asked if he could stay at his house, officers called Watson. Officers relayed to Watson that Von Derhaar "said that if he's not under arrest he wants to go back into his house." Watson ordered officers to "tell [Von Derhaar] he's being put back on the clock, he's being ordered to come into work to take this test." The call ended. Von Derhaar asked "if I quit right, now, do I have to come with you, sir?" Officers told Von Derhaar he needed "to go up and sign the paperwork." He was subsequently transported to the PIB. Von Derhaar ultimately resigned rather than submitting to a drug test.

Von Derhaar sued Watson, among others, under § 1983, alleging that he was subjected to unlawful arrest, search, and seizure in violation of the Fourth Amendment. Watson filed a motion for judgment on the pleadings and, in the alternative, a motion summary judgment, in which he invoked QI. The district court granted Watson's motion in part and denied it in part. The court dismissed Von Derhaar's claims against Watson relating to the alleged unlawful entry into Von Derhaar's home. The court denied QI for the unlawful-seizure claim, holding that "[a]ny reasonable official under the

totality of circumstances here or in Darryl Watson's position should have known that ordering the seizure of a private citizen from their home for the purpose of completing a drug test, without a warrant, probable cause, or exigent circumstances is objectively unreasonable." Watson appeals.

## II.

"Because [the] claims arise under § 1983, and the denial of QI is a 'final decision' under § 1291, this court has jurisdiction over [the] appeal." *Lewis v. Walley*, 168 F.4th 327, 330 (5th Cir. 2026) (footnote omitted). Appellate courts review a denial of a motion for summary judgment *de novo*. *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Courts must view the evidence in the light most favorable to the nonmovant. *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012).

"The doctrine of [QI] protects public officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Where a defendant asserts QI, "the burden shifts to the plaintiff to show that the defense is not available." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015).

"[A] plaintiff seeking to overcome [QI] must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Carmona v. City of Brownsville*, 126 F.4th 1091, 1096 (5th Cir. 2025) (quoting *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020)).

A government official "violates clearly established law when, at the

time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified). Although a case does not have to be "directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

## III.

"Supervisory officials are not liable under § 1983 for the actions of subordinates on any theory of vicarious liability." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695 (5th Cir. 2017) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)). To be liable under § 1983, a supervisor "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation. Personal involvement of supervising personnel generally includes giving a command, signal, or any other form of direction to the officers that prompted the detention or arrest." *Id.* (citation modified).

Watson directed officers to "tell [Von Derhaar] he's being put back on the clock, he's being ordered to come into work to take this test." Watson made that statement immediately after officers informed Watson that Von Derhaar wished to remain at his home. Acting on Watson's order, officers compelled Von Derhaar to leave his home and transported him to the PIB. We already held that the actions ordered by Watson, when viewed in the light most favorable to Von Derhaar, constituted an unlawful seizure in violation of the Fourth Amendment. *See Von Derhaar v. Watson*, 109 F.4th 817, 829–30 (5th Cir. 2024).

But because Watson invoked QI, that is not enough. His conduct must have been objectively unreasonable in light of clearly established law. *See al-*

4

*Kidd*, 563 U.S. at 741. It is clearly established that a seizure occurs where, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Watson was aware that Von Derhaar wished to remain in his house, yet Watson ordered officers, without a warrant or exigent circumstances, to order Von Derhaar to go to the PIB to take a drug test. Viewing the facts in the light most favorable to Von Derhaar, Watson's statements are objectively unreasonable in light of clearly established Fourth Amendment law.

\* \* \* \* \*

At this early, summary judgment stage, Von Derhaar has established a genuine dispute of material fact on the unlawful-seizure claim. The facts, when viewed in the light most favorable to him, constitute a clearly established Fourth Amendment violation. We express no view, however, as to the ultimate merits of any claim, which will be determined beyond the summary judgment stage. The order denying summary judgment is AFFIRMED.