# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2025

Lyle W. Cayce
Clerk

———————

No. 25-60020

———————

DEBRA MAYS JACKSON,

*Plaintiff—Appellee*,

*versus*

TOM DUFF, *Individual and official capacity*;
STEVEN CUNNINGHAM, *Only in his individual capacity*;
BRUCE MARTIN, *Only in his individual capacity*;
JEANNE CARTER LUCKEY, *Only in her individual capacity*;
CHIP MORGAN, *Only in his individual capacity*;
GEE OGLETREE, *Only in his individual capacity*;
HAL PARKER, *Only in his individual capacity*;
J. WATT STARR, *Only in his individual capacity*,

*Defendants—Appellants*.

———————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CV-3095

———————————————————

Before SMITH, STEWART, and HAYNES, *Circuit Judges*.

JERRY E SMITH, *Circuit Judge*:

Debra Mays Jackson, Vice President of Jackson State University ("JSU"), sued members of the Mississippi Board of Trustees of State Institutions of Higher Learning (the "Board") in their individual capacities, alleg-

ing equal protection sex discrimination claims, after she was not hired to be President of JSU. Defendants moved to dismiss, invoking qualified immunity ("QI"). The district court denied defendants' motion to dismiss and the QI defense asserted therein. Defendants appeal. Because Mays Jackson adequately pleaded a clearly established Equal Protection Clause violation, we affirm.

I.

Mays Jackson is a female senior administrator at JSU. She holds bachelor's, master's, specialist, and doctorate degrees, and she has experience in university administration, having served as vice president of Hinds Community College. The individual defendants—Tom Duff, Steven Cunningham, Jeanne Carter Luckey, Bruce Martin, Chip Morgan, Gee Ogletree, J. Walt Starr, and Hal Parker—are members of the Board, which is a state agency charged with governing Mississippi's public universities and vested with the power to hire the president of each Mississippi state university, including JSU.

Mays Jackson has served as JSU's Vice President and Chief of Staff since 2017. On February 10, 2020, JSU's president, William Bynum, stepped down from his role. The Board then appointed Bynum's special assistant, Thomas Hudson, a male, as JSU's interim president, even though he reported to Mays Jackson—and despite the Board's knowledge that Mays Jackson was interested in the post, as she had "regularly run JSU in Bynum's absence." Mays Jackson continued as Vice President and Chief of Staff during Hudson's interim presidency—at Hudson's request and acknowledgment that "he was not qualified or prepared to serve." Soon thereafter, the Board dispensed with a national search, declined to solicit any applications, and instead voted to appoint Hudson as JSU's twelfth president. Mays Jackson filed an EEOC charge in 2021 following that incident, alleging the Board

had "discriminated against [Mays Jackson] on account of her sex when its policymakers" voted to hire Hudson as President "without allowing applicants clearly [more] qualified" to apply for the president position.

After a turbulent tenure as president, Hudson was placed on administrative leave in March 2023. The Board members began the presidential search process. Mays Jackson applied but was denied an interview. The committee selected Marcus Thompson, Deputy Commissioner of the Board, for the presidency.

Thompson never applied for the position. Mays Jackson alleges that, based on the criteria the Board gave to an outside search committee, she "was clearly more qualified for the President's position" because Thompson received his doctorate degree less than six months before he was named president, and he had no university administrative experience before his appointment.

Mays Jackson sued the Board and its individual members based on the 2020 and 2023 hiring decisions, alleging defendants had discriminated against her on the basis of sex. Mays Jackson asserted violations of the Fourteenth Amendment's Equal Protection Clause and the First Amendment via 42 U.S.C. § 1983. She also brought sex discrimination and retaliation claims under Title VII. Relevant to this appeal, the individual defendants moved to dismiss, asserting QI.

The district court granted the motion in part, dismissing all claims against the board members except for the § 1983 equal protection claim based on the 2023 hiring decision.[1] The court first held that Mays Jackson alleged

_____

[1] The district court further denied the motion to dismiss as to Jackson's Title VII claims against the Board. The only issue before this court on appeal is the denial of the

No. 25-60020

"a prima facie case of sex discrimination for failure to promote against the individually named defendants who voted to instate Thompson as JSU President in 2023." Next, the court held that because it was clearly established that "failure to promote an employee based on their relationship in a protected class was constitutionally proscribed [under the Fourteenth Amendment] at the time of the purported misconduct," QI was inappropriate. Defendants appeal.

## II.

The court has jurisdiction under 28 U.S.C. § 1291 to review final judgments. 28 U.S.C. § 1331. Because Mays Jackson's claims arise under § 1983, and the denial of QI is a "final decision" under § 1291,[2] this court has jurisdiction over defendants' appeal.

This court reviews the denial of a motion to dismiss *de novo. Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "These standards are the same when a motion to dismiss is based on [QI]. So, a complaint survives dismissal if it pleads facts that, if true, would permit the inference that defendants are liable under § 1983 and would overcome their [QI] defense. Thus, it is the plaintiff's burden to demonstrate that [QI] is inappropriate." *Benfer v. City of Baytown*, 120 F.4th 1272, 1279

---

motion to dismiss Jackson's § 1983 equal protection claim arising from the 2023 hiring decision.

[2] "[A] district court's denial of a claim of [QI], to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

4

(5th Cir. 2024) (citation modified), *cert. denied*, 145 S. Ct. 1313 (2025).

### III.

"The doctrine of [QI] protects public officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Where a defendant asserts QI, "the burden shifts to the plaintiff to show that the defense is not available." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015).

"[A] plaintiff seeking to overcome [QI] must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Carmona v. City of Brownsville*, 126 F.4th 1091, 1096 (5th Cir. 2025).  "Therefore, to succeed in opposition to QI asserted in a Rule 12(b)(6) motion to dismiss, even where plaintiff adequately pleads the violation of a federal right, plaintiff still must adequately plead that defendant's conduct was objectively unreasonable in light of clearly established law." *Id.* (citation modified).

### A.

Jackson alleges that defendants discriminated against her on the basis of sex, violating the Fourteenth Amendment's Equal Protection Clause.

"To state a claim of [sex] discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege . . . that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012) (quoting *Priester v. Lowndes Cnty.,* 354 F.3d 414, 424 (5th Cir. 2004)).  "[D]iscriminatory intent can be shown in the same way under § 1983 as under Title VII—by either

direct or circumstantial evidence." *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020) (citing *Lee v. Conecuh Cnty. Bd. of Educ.*, 634 F.2d 959, 961–62 (5th Cir. Jan. 1981)). To establish a *prima facie* case of discrimination using circumstantial evidence under the *McDonnell Douglas* framework at the motion-to-dismiss stage, a plaintiff must plead that "(1) he is a member of a protected class; (2) he was qualified and applied for the job; (3) the employer rejected him for the job despite his qualifications; and (4) a similarly situated applicant outside the protected class was hired." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[3]

"But Title VII and § 1983 are different in at least one important way. Critically, '[u]nlike Title VII, § 1983 applies to individuals.' And since § 1983 applies to individuals, we must be keenly aware of what § 1983 requires before plaintiffs can seek relief from individuals—namely individual causation." *Jones*, 812 F. App'x at 238 (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 640–41 (5th Cir. 2018) (per curiam)). After all, in a § 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Thus, while the prima facie elements of a Title VII claim may establish an *employer*'s liability for intentional discrimination, a § 1983 plaintiff must addi-

---

[3] Defendants have not forfeited arguments related to discriminatory intent. They contended in their motion to dismiss that Mays Jackson could not succeed under *McDonnell Douglas* because she did not sufficiently plead that she was qualified for the role of President or that she was similarly situated to Thompson. Because defendants affirmatively rebutted elements of a discriminatory intent test before the district court, they have not waived their argument that Jackson failed to prove discriminatory intent. "Moreover, it is quite possible that the strictures of waiver are relaxed in the context of invoking QI because '[o]nce the defense . . . has been raised, the plaintiff has the burden of demonstrating that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time.'" *Terrell v. Allgrunn*, 114 F.4th 428, 440 (5th Cir. 2024) (quoting *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023)).

tionally plead and prove which actions of the *individual defendant* caused the harm." *Jones*, 812 F. App'x at 239 (citing *Sims*, 894 F.3d at 641).

Jackson has pleaded the four traditional *McDonnell Douglas* factors. First, she pleaded that she is a woman, a protected class. Second, she pleaded that she was qualified for the position based on the criteria the Board gave to the outside search firm, providing details on her extensive professional and academic experience. Third, she pleaded that she was not hired, an adverse employment action. *See Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499–500 (5th Cir. 2023). Fourth, by pleading Thompson's lack of relevant experience, she alleged that that she was similarly situated to Thompson, a man.

Though Mays Jackson pleaded the four traditional *McDonnell Douglas* factors, she must still aver that each "official's own individual actions[] has violated the Constitution." *Iqbal*, 556 U.S. at 676. This court examined the individual causation requirement as applied to the employment context in *Jones*, which, though unpublished, provides useful guidance.[4] In *Jones*, 812 F. App'x at 239, the court ruled that an employee did not adequately plead individual causation after he was not promoted. The court explained that Jones did "not allege that the [defendants] were the ones who interviewed him, rejected him, or selected someone else for the job." *Id*. "By not alleging any particular actions taken by the individual defendants, Jones failed to adequately state a § 1983 [discrimination] claim upon which relief can be granted." *Id*.

Mays Jackson pleaded what Jones did not. Mays Jackson alleged that "JSU Search Committee members Steven Cunningham, Ormella Cummings, Bruce Martin, Gee Ogletree and Hal Parker denied Mays Jackson an interview for the President's position." Further, she alleged that "Steven

---

[4] Both briefs heavily cite *Jones* in support of their positions.

Cunningham, Ormella Cummings, Tom Duff, Teresa Hubbard, Jeanne Carter Luckey, Bruce Martin, Chip Morgan, Gee Ogletree, J. Walt Starr, Chip Morgan, Gregg Rader and Hal Parker also voted to name Marcus Thompson as President," thus denying her the position.

Defendants assert that "Mays Jackson fails to reference the individual actions of any of the Defendants-Appellants, and instead continues to lump them together in their entirety based on their service on the IHL Board." But at the motion-to-dismiss stage we must view the pleaded facts in the light most favorable to the plaintiff. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). Mays Jackson's naming of each individual board member and alleging that they voted to hire Thompson as President, denying Mays Jackson's candidacy, must be construed as asserting that each individual member voted and therefore proximately caused the alleged constitutional injury. As a result, Mays Jackson has adequately pleaded that each defendant individually caused her alleged injury.

Because Mays Jackson asserted facts establishing a *prima facie* case of sex discrimination, and she pleaded that each defendant individually caused her alleged constitutional harm, she has adequately stated an equal protection violation.

## B.

Though Mays Jackson has pleaded a constitutional violation, she must also allege that defendants violated clearly established law. *Carmona*, 126 F.4th at 1096. A government official "violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified). Although a case does not have to be "directly on point for a right to be clearly established, existing precedent must have placed

the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

"Sex discrimination . . . in public employment violate[s] the Equal Protection Clause of the Fourteenth Amendment." *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 550 (5th Cir. 1997). "[O]fficials generally are precluded from proving that intentionally discriminatory conduct is objectively reasonable. . . . Thus, generally, where the [pleading] is sufficient to support a claim of intentional gender or race discrimination, any immunity defense will be foreclosed." *Piatt v. City of Austin*, 378 F. App'x 466, 469 (5th Cir. 2010) (citing *Southard*, 114 F.3d at 550). Because Mays Jackson has adequately pleaded a claim of intentional sex discrimination under § 1983, she has pleaded a violation of clearly established law, so QI is foreclosed at this stage of the proceeding. *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) ("Because we have already determined that [the defendant's] alleged behavior is actionable under title VII and § 1983, we have necessarily determined that such behavior was objectively offensive and, therefore, not objectively reasonable. Thus, [the defendant] is not entitled to [QI].").

\* \* \* \* \*

At this early, motion-to-dismiss stage, Mays Jackson has adequately pleaded an equal protection violation. She stated a *prima facie* case of sex discrimination and averred that each defendant individually caused her alleged constitutional harm. Further, the claimed constitutional violation, if true, is clearly established and objectively unreasonable. The judgment denying dismissal is AFFIRMED.

We express no view as to the ultimate merits of any claim. Any such merits will be determined beyond the pleading stage as this case advances to summary judgment (if sought) or trial. We view only the pleadings and take

No. 25-60020

them as true for purposes of evaluating the ruling on the motion to dismiss. We place no limitation on the matters that the district court, in its discretion, may choose to address and decide as this matter progresses beyond the pleadings stage.